**Steve D. Larson,** OSB No. 863540
Email: slarson@stollberne.com
**Nadine A. Gartner**, OSB No. 103864
Email: ngartner@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

**E. Michelle Drake** (*admitted Pro Hac Vice*)
Email: drake@nka.com
**Daniel C. Bryden** (*admitted Pro Hac Vice*)
Email: dbryden@nka.com
NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

**Attorneys for Plaintiff**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **STEPHANIE MYERS**, individually and as a representative of the Classes,<br><br>Plaintiff,<br><br>v.<br><br>**NATIONAL TENANT NETWORK, INC.**, an Oregon corporation,<br><br>Defendant. | Case No. 3:14-cv-00327-AC<br><br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT NATIONAL TENANT NETWORK'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

SUMMARY OF CLAIMS IN THIS CASE ............................................................................... 2

ARGUMENT ............................................................................................................................. 4

I.      MOTION TO DISMISS STANDARD OF REVIEW ...................................................... 4

II.     NTN'S MOTION TO DISMISS THE CLASS CLAIMS SHOULD BE DENIED ..................... 5

        A.      NTN's Challenge to the Rule 23 Allegations is Premature ................... 5

        B.      Plaintiff Has Adequately Pled Class Claims ...................................... 8

              1.      Plaintiff Has Sufficiently Alleged the Elements Of Rule 23(a) ............... 8

                     a.      Plaintiff Has Sufficiently Alleged Numerosity ..................... 8

                     b.      Plaintiff Has Sufficiently Alleged Commonality ..................... 9

                     c.      Plaintiff Has Sufficiently Alleged Typicality ..................... 10

                     d.      Plaintiff Has Sufficiently Alleged Adequacy ..................... 10

              2.      Plaintiff Has Sufficiently Alleged The Requirements Of Rule 23(b)(3) ... 12

                     a.      Plaintiff Has Sufficiently Alleged Predominance ..................... 12

                           i.      Common Questions Predominate for Plaintiff's Mismatched Eviction Records Claim (Count I) ................. 12

                         ii.      Common Questions Predominate for the Duplicative Reporting Class (Count II) ................. 14

                         iii.      Common Questions Predominate for the Outdated Information Classes (Counts III-IV) ................. 15

                         iv.      Common Questions Predominate for the Disclosure Classes (Counts V-VI) ................. 16

| | | | |
|---|---|---|---|
| | b. | Plaintiff Has Sufficiently Alleged Superiority | 16 |
| 3. | | The Proposed Classes Are Adequately Defined | 18 |
| | a. | The Mismatched Eviction Records and The Duplicative Reporting Classes (Counts I and II) Are Adequately Defined | 18 |
| | b. | The Texas Law Classes (Counts IV and VI) Are Not Overbroad | 19 |
| | c. | The Disclosure Classes (Counts V and VI) Are Adequately Defined | 20 |
| C. | | Plaintiff Has Sufficiently Alleged Willfulness | 21 |

CONCLUSION ... 24

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Ashby v. Farmers Ins. Co. of Oregon*, No. CV 01-1446-BR, 2004 WL 2359968 (D. Or. Oct. 18, 2004) ........................................................................................................................................ 7

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................................... 5

*Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986 (9th Cir. 2011) ...... 5

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) ......................................... 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 5

*Butto v. Collecto Inc.*, 290 F.R.D. 372 (E.D.N.Y. 2013) ........................................................ 16

*Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991) ...................... 13

*Capps v. U.S. Bank Nat. Ass'n*, No. CV 09-752-PK, 2009 WL 5149135 (D. Or. Dec. 28, 2009) ..................................................................................................................... 9, 10, 11

*Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009) ................................. 7

*Clark v. LG Electronics U.S.A., Inc.*, 13-CV-485 JM JMA, 2013 WL 5816410 (S.D. Cal. Oct. 29, 2013) ............................................................................................................................... 7

*Clerkin v. MyLife.Com*, No. C 11-00527 CW, 2011 WL 3809912 (N.D. Cal. Aug. 29, 2011) .. 6, 8

*Cruz v. Sky Chefs, Inc.*, No. C-12-02705 DMR, 2013 WL 1892337 (N.D. Cal. May 6, 2013) ...... 6

*Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C 01-21151 JW PVT, 2008 WL 2038047 (N.D. Cal. May 12, 2008) ...................................................................................... 11

*Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326 (1980) .................................................. 6

*Dusan-Speck v. St. Charles Health Sys., Inc.*, 6:13-CV-00358-AA, 2013 WL 4083617 (D. Or. Aug. 9, 2013) ............................................................................................................. 9, 10, 11, 16

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) .................................................. 5

*Gillespie v. Equifax Info. Servs., LLC*, No. 05 C 138, 2008 WL 4614327 (N.D. Ill.

Oct. 15, 2008) ........................................................................................................... 7, 10

*Gillibeau v. City of Richmond*, 417 F.2d 426 (9th Cir. 1969) ....................................... 5

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) ................ 13, 19

*Haley v. Talentwise*, *Inc.* No. C13-1915 MJP, ___ F. Supp. 2d ___, 2014 WL 1304007 (W.D.

Wash. Apr. 2, 2014) *reconsid. d'nd,* 2014 WL 1648480 (W.D. Wash. Apr. 23, 2014) .... 3, 18, 21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................... 10

*Harris v. Equifax Credit Info. Servs., Inc.*, No. CIV. 01-1728-JE, 2003 WL 23962280 (D. Or.

Nov. 24, 2003) ........................................................................................................... 23

*Harris v. U.S. Physical Therapy, Inc.*, No. 2:10-CV-01508-JCM, 2012 WL 3277278 (D. Nev.

July 18, 2012) *report & recomm. adopted*, 2012 WL 3277276 (D. Nev. Aug. 9, 2012) ............... 6

*Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161 (7th Cir. 1974) ........................... 15

*Helde v. Knight Transp., Inc.*, No. C12-0904RSL, 2013 WL 5588311 (W.D. Wash.

Oct. 9, 2013) ............................................................................................................. 15

*Holloway v. Full Spectrum Lending*, No. CV 06-5975 DOC RNBX, 2007 WL 7698843 (C.D.

Cal. June 26, 2007) ..................................................................................................... 7

*Holman v. Experian Info. Solutions, Inc.*, No. C 11-0180 CW, 2012 WL 1496203 (N.D. Cal.

Apr. 27, 2012) ............................................................................................................ 6

*Ingles v. City of New York*, No. 01 CIV. 8279(DC), 2003 WL 402565 (S.D.N.Y.

Feb. 20, 2003) ........................................................................................................... 12

*Jane B. by Martin v. N.Y. City Dep't of Soc. Servs.*, 117 F.R.D. 64 (S.D.N.Y. 1987) .......... 11, 12

*Kesler v. Ikea U.S. Inc.*, No. SACV 07-568 JVS RNBX, 2008 WL 413268 (C.D. Cal. Feb. 4,

2008) ......................................................................................................................... 6

*Kubas v. Standard Parking Corp. IL*, 594 F. Supp. 2d 1029 (N.D. Ill. 2009) ........................ 21

*Kudlicki v. Capital One Auto Fin., Inc.*, 241 F.R.D. 603 (N.D. Ill. 2006) ........................ 7

*Marlo v. United Parcel Serv.*, 639 F.3d 942 (9th Cir. 2011) ........................ 6

*Medrano v. WCG Holdings, Inc.*, No. SACV07-0506JVSRNBX, 2007 WL 4592113 (C.D. Cal.

Oct. 15, 2007) ........................ 6

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004) ........................ 16

*Meyer v. Nat'l Tenant Network, Inc.*, No. C-13-03187 JSC, 2014 WL 197773 (N.D. Cal. Jan. 17,

2014) ........................ 1, 6

*Mitchell v. JCG Indus., Inc.*, No. 13-2115, 745 F.3d 837 (7th Cir. 2014) ........................ 7

*Murray v. E\*Trade Fin. Corp.*, 240 F.R.D. 392 (N.D. Ill. 2006) ........................ 7

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006) ........................ 17

*Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295 (N.D. Ill. 2005) ........................ 7

*Newport v. Dell Inc.*, No. CIV 08-096TUCCKJJCG, 2009 WL 1636248 (D. Ariz.

June 8, 2009) ........................ 8

*Pirian v. In-N-Out Burgers*, No. SACV061251DOCMLGX, 2007 WL 1040864

(C.D. Cal. 2007) ........................ 21

*Reynoso v. S. Cnty. Concepts*, No. SACV07-373-JVSRCX, 2007 WL 4592119 (C.D. Cal. Oct.

15, 2007) ........................ 6

*Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014) ........................ 22

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ........................ 21, 23

*Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402 (E.D. Pa. 2010) ........................ 7, 15

*Singleton v. Domino's Pizza, LLC*, No. CIV.A. DKC 11-1823, 2012 WL 245965 (D. Md. Jan. 25,

2012) ........................ 21

*Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426 (E.D. Pa. 2010) ........................ 22, 23

*Stevenson v. TRW Inc.*, 987 F.2d 288 (5th Cir. 1993) ........................................ 23

*Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133 (D.N.J. 2009) ........................ 7

*Tchoboian v. Parking Concepts, Inc.*, No. SACV 09-422 JVS(ANX), 2009 WL 2169883 (C.D. Cal. July 16, 2009) ........................................................................ 6, 17

*Walker v. Calusa Investments, LLC*, 244 F.R.D. 502 (S.D. Ind. 2007) ........................ 7

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609 (N.D. Cal. 2007) .......... 5

*White v. E-Loan, Inc.*, No. C05-02080SI, 2006 WL 2411420 (N.D. Cal. Aug. 18, 2006) ...... 7, 17

*White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1091-92 (C.D. Cal. 2011) *rev'd and r'md on other grounds sub nom. Radcliffe v. Experian Info. Solutions Inc.,* 715 F.3d 1157 (9th Cir. 2013) ................................................................ 15

*Whitson v. Bumbo*, No. C 07-05597 MHP, 2008 WL 2080855 (N.D. Cal. May 14, 2008) ........... 8

*Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970 (9th Cir. 2010) ........................ 6

*Williams v. LexisNexis Risk Mgmt. Inc.*, No. CIV A 306CV241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) ............................................................................ 7

*Willis v. Debt Care, USA, Inc.*, No. 3:11-CV-430-ST, 2011 WL 7121288 (D. Or. Oct. 24, 2011) ............................................................................ 6, 7

Rules and Statutes

15 U.S.C. § 1681, *et seq.* .................................................................. *passim*

Fed. R. Civ. P. 8(a)(2) ...................................................................... 5

Fed. R. Civ. P. 12(b)(6) .............................................................. 1, 6, 8, 20, 24

Fed. R. Civ. P. 23, *et seq.* ............................................................... *passim*

Tex. Bus. & Com. Code § 20.01, *et seq.* ................................................... *passim*

## **INTRODUCTION**

Defendant National Tenant Network, Inc. ("NTN") produced a background check on Plaintiff Stephanie Myers ("Plaintiff") riddled with errors, inconsistencies, and outdated information in violation of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and the Texas Business and Commercial Code, Tex. Bus. & Com. Code § 20.01, *et seq.* ("TCRA").  NTN further failed to provide Plaintiff with disclosures advising her of her rights and providing instructions on how to read her report as required by the FCRA and the TCRA. For herself and the proposed classes, Plaintiff sued under the FCRA and the TCRA for statutory damages.

Instead of answering the Complaint, NTN cobbled together a motion to dismiss that misconstrues or ignores the allegations in the Complaint and relies on outdated and non-controlling law.  NTN's motion should be denied.

*First*, NTN's motion should be denied because it is a premature opposition to class certification and raises arguments that are appropriate for the class certification stage rather than the pleadings stage.  Plaintiff has more than adequately met the requirements for pleading a class action.  NTN has been cautioned against filing such premature motions in at least one other case. *See Meyer v. Nat'l Tenant Network, Inc.*, No. C-13-03187 JSC, 2014 WL 197773 at *6 (N.D. Cal. Jan. 17, 2014) (denying NTN's motion to dismiss "the class claims as deficient under Rule 12(b)(6)" as premature).

*Second*, the remaining portion of NTN's motion seeks to dismiss Plaintiff's claims for willful violations of the FCRA and the TCRA.  Besides ignoring many of the allegations that establish willfulness, NTN relies on inapposite and outdated law on the definition of willfulness. Based on the actual pleadings and current caselaw, NTN's motion to dismiss should be denied.

## SUMMARY OF CLAIMS IN THIS CASE

Plaintiff is a resident of Temple, Texas.  (Compl. ¶ 21.)  On or about June 26, 2013, Ivanhoe Duplexes procured a background check (a "consumer report" within the meaning of the FCRA and TCRA) on Plaintiff from NTN.  (*Id.* ¶ 35 & Ex. 3.)  Plaintiff's background check contained numerous inaccuracies.

First, the report contained erroneous eviction information.  Plaintiff's full name is Stephanie Jo Myers.  (*Id.,* Ex. 3 at 5.)  However, NTN's report on her contained information about evictions for Stephen L. Myers and Stephen Myers, with both evictions being reported at addresses where Plaintiff never lived.  (*Id.* ¶ 38.)  The explanation for these erroneous listings is apparent from the report:  NTN did not conduct a search using Plaintiff's full name, Stephanie Jo Myers, but instead conducted a search for "Myers, Step*", where the asterisk indicated an open-ended search for all first names beginning with "Step."  (*Id.* ¶ 39.)

Plaintiff's report further stated:  "All Civil Court Records are filed by Name Only.  This makes it impossible to be certain that the following filing involve[s] your applicant.  Please call the plaintiff listed for more information."  (*Id.* ¶ 40.)  This statement is not true.  As evidenced by the contents of Plaintiff's report, civil filings include far more than the mere name of the individuals involved, including the address from which the eviction occurred.  NTN sometimes even provides the name of the landlord in the report.  (*Id.* ¶ 41.)  Despite reporting evictions based on partial name matches, NTN makes no effort to verify that the identity of the parties in the eviction proceeding match the name of the consumer identified as the subject of the report.  (*Id.* ¶¶ 50-55.)  Plaintiff, for herself and the Mismatched Eviction Records class, has alleged that NTN willfully violated 15 U.S.C. § 1681e(b), which requires consumer reporting agencies, like

NTN, to "follow reasonable procedure to assure maximum possible accuracy of the information" in its reports.  (*Id*. ¶¶ 78-83.)

Second, the report contained duplicative, inconsistent, and otherwise misleading information about Plaintiff's criminal background due to NTN's flawed procedures in reporting criminal records.  The report is duplicative in that it lists eight separate entries for criminal charges when Plaintiff has only been charged on four occasions.  (*Id*. ¶¶ 52-53.)  These charges were all misdemeanors, two DUIs, and two dismissed assault charges.  (*Id.*, Ex 3.)  The entries are not arranged chronologically and some of them do not contain basic information such as the case number or charge date that would allow someone to determine that the entries were duplicative.  (*Id*. ¶¶ 53-54.)  Moreover, the information in the report is internally inconsistent, with a single offense being included three times and having three separate and conflicting dispositions.  (*Id*. ¶¶ 55-56.)  These failures demonstrate that NTN failed to keep reasonable procedures and constitute a willful violation of 15 U.S.C. § 1681e(b).  (*Id*. ¶¶ 84-89.)

Third, Plaintiff's report unlawfully contained information about dismissed criminal charges that predate the report by over seven years.  *Id*. ¶¶ 58-60; *see Haley v. Talentwise, Inc.* No. C13-1915 MJP, ___ F. Supp. 2d ___, 2014 WL 1304007 at *3 (W.D. Wash. Apr. 2, 2014) *reconsideration denied,* 2014 WL 1648480 (W.D. Wash. Apr. 23, 2014) ("[A] record of arrest which includes a dismissed charge from over seven years ago is adverse information that consumer reporting agencies cannot disclose.").  Both the FCRA and the TCRA limit the reporting of dismissed charges to seven years, but the FCRA seven-year clock starts with the "date of entry" while the TCRA clock starts with the date of disposition.  15 U.S.C. § 1681c(a)(2); Tex. Bus. & Com. Code § 20.05(4).  Plaintiff's third charge on her report stemmed from an August 29, 2005 arrest, was filed on October 20, 2005, and was dismissed on July 31,

2006.  Because the charge was filed over seven years from when her report was produced, NTN's inclusion of this charge violated the FCRA.  For her fourth charge, the offense date was May 20, 2003, the charge was filed on February 11, 2004, and was dismissed on February 10, 2005.  All of these events are outside the reporting periods allowed by both the FCRA and the TCRA.

Fourth, in responding to Plaintiff's request for her file, NTN failed to include a copy of the summary of rights required by the FCRA, 15 U.S.C. § 1681g(c)(2)(A).  (Compl. ¶¶ 61-62.)  NTN also failed to include the "set of instructions describing how information is presented on the consumer reporting agency's written disclosure of the consumer file," Tex. Bus. & Com. Code § 20.03(a)(2), and a written statement that describes the consumer's right under the TCRA, as required by Tex. Bus. & Com. Code § 20.03(d).  (Id. ¶ 62.)

In sum, Plaintiff alleges that NTN systematically violated the FCRA and the TCRA by failing to use reasonable procedures to ensure maximum possible accuracy in its reports, by reporting outdated information, and by failing to make the required disclosures to consumers.  For herself and the proposed classes, Plaintiff seeks statutory damages for willful violations of the FCRA, 15 U.S.C. § 1681n and willful or negligent violations of the TCRA.[1]  Tex. Bus. & Com. Code § 20.09.

## **ARGUMENT**

### I.     **MOTION TO DISMISS STANDARD OF REVIEW.**

To state a claim sufficient to withstand a motion to dismiss, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

---

[1] NTN requests that the "complaint be dismissed," but provides no argument as to why the Court should dismiss Plaintiff's individual claims for negligence under the TCRA, which Plaintiff has alleged in the alternative.  (NTN Mem. at 1.)

8(a)(2).   To satisfy this standard, a complaint is only required to contain sufficient factual allegations that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   This plausibility standard is not akin to a "probability requirement."   *Id.* As the Ninth Circuit has explained:

> [S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings …. [A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

"When ruling on a motion to dismiss, [the court] accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party.   The court draws all reasonable inferences in favor of the plaintiff." *Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011) (internal quotations and citations omitted).

## II.   NTN'S MOTION TO DISMISS THE CLASS CLAIMS SHOULD BE DENIED.

NTN's motion to dismiss the class allegations is premature and should be denied as such. Even if the Court considers the merits of NTN's motion, Plaintiff has adequately pled her class allegations.

### A.   NTN's Challenge to the Rule 23 Allegations is Premature.

The Ninth Circuit has stated that "compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim . . . ." *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969).   Courts throughout the Ninth Circuit have recognized "that the granting of motions to dismiss class allegations before discovery has commenced is rare."   *In re Wal-Mart*

*Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007); *Willis v. Debt Care,*

*USA, Inc.*, No. 3:11-CV-430-ST, 2011 WL 7121288 at \*14 (D. Or. Oct. 24, 2011) (same); *see*

*also Cruz v. Sky Chefs, Inc.*, No. C-12-02705 DMR, 2013 WL 1892337 at \*5 (N.D. Cal. May 6,

2013) ("[Many courts have recognized that the sufficiency of class allegations are better

addressed through a class certification motion, after the parties have had an opportunity to

conduct some discovery.").   The reasons that a Rule 12(b)(6) motion is inappropriate to

challenge class allegations have been explained to NTN in other litigation:

> First, Rule 12(b)(6) permits a party to assert a defense that the opposing party has
> failed "to state a claim upon which relief can be granted." A class action is a
> procedural device, not a claim for relief. *See Deposit Guaranty Nat'l Bank v.
> Roper,* 445 U.S. 326, 331 (1980). Second, other Federal Rules of Civil Procedure
> exist to address impertinent allegations and class certification. Thus, the use of
> Rule 12(b)(6) to address the same would create redundancies in the Federal Rules.
> Finally, the standard of review applied to orders granting motions to dismiss
> differs from that governing orders granting or denying class certification.  The
> Ninth Circuit reviews de novo orders dismissing claims pursuant to Rule 12(b)(6).
> *Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970, 974 (9th Cir.2010). Grants
> and denials of class certification, however, are reviewed for abuse of discretion.
> *Marlo v. United Parcel Serv.,* 639 F.3d 942, 946 (9th Cir.2011).

*Meyer v. Nat'l Tenant Network, Inc.*, No. C-13-03187 JSC, 2014 WL 197773 at \*6 (N.D. Cal.

Jan. 17, 2014) (quoting *Clerkin v. MyLife.Com*, No. C 11-00527 CW, 2011 WL 3809912 at \*3

(N.D. Cal. Aug. 29, 2011) (internal citations altered).

NTN's motion is especially inappropriate in Plaintiff's case because FCRA class actions

are routinely certified.[2]  The central issues in this case involve NTN's standard procedures for

---

[2] *See*, *e.g.*, *Holman v. Experian Info. Solutions, Inc.*, No. C 11-0180 CW, 2012 WL 1496203
(N.D. Cal. Apr. 27, 2012); *Harris v. U.S. Physical Therapy, Inc.*, No. 2:10-CV-01508-JCM,
2012 WL 3277278 (D. Nev. July 18, 2012) *report and recommendation adopted*, 2012 WL
3277276 (D. Nev. Aug. 9, 2012); *Tchoboian v. Parking Concepts, Inc.*, No. SACV 09-422
JVS(ANX), 2009 WL 2169883 (C.D. Cal. July 16, 2009); *Kesler v. Ikea U.S. Inc.*, No. SACV
07-568 JVS RNBX, 2008 WL 413268 (C.D. Cal. Feb. 4, 2008); *Medrano v. WCG Holdings,
Inc.*, No. SACV07-0506JVSRNBX, 2007 WL 4592113 (C.D. Cal. Oct. 15, 2007); *Reynoso v. S.*

producing consumer reports, for including outdated information in those reports, and for failing

to provide consumers with legally required disclosures.  Each of these standard policies and

practices yields a common factual question rendering Plaintiff's claims amenable to certification.

Further, because only statutory damages are being sought, there are no individualized damage

issues.  Even if NTN believes that the class claims are without merit, it should not be opposed to

class certification because certification would preclude NTN from having to re-litigate these

issues in future cases.  *See Mitchell v. JCG Indus., Inc.*, No. 13-2115, 745 F.3d 837, 838 (7th Cir.

2014).

Considering that FCRA cases are amenable to class treatment and that there has been no

discovery in this case, this Court should deny NTN's motion to dismiss Plaintiff's class

allegations as premature.  *See Willis,* 2011 WL 7121288 at *14 ("[A]rguments regarding the

merits of class certification on a motion to dismiss under FRCP 12 are premature."); *Clark v. LG

Electronics U.S.A., Inc.*, 13-CV-485 JM JMA, 2013 WL 5816410 at *17 (S.D. Cal. Oct. 29,

2013) ("LG's motion regarding Plaintiff's class allegations is premature, and the court is not

prepared to find, based on the pleadings alone, that Plaintiff cannot possibly state valid class

---

*Cnty. Concepts*, No. SACV07-373-JVSRCX, 2007 WL 4592119 (C.D. Cal. Oct. 15, 2007);
*Holloway v. Full Spectrum Lending*, No. CV 06-5975 DOC RNBX, 2007 WL 7698843 (C.D.
Cal. June 26, 2007); *White v. E-Loan, Inc.*, No. C05-02080SI, 2006 WL 2411420 (N.D. Cal.
Aug. 18, 2006); *Ashby v. Farmers Ins. Co. of Oregon*, No. CV 01-1446-BR, 2004 WL 2359968
(D. Or. Oct. 18, 2004); *Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 396 (N.D. Ill. 2006);
*Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295 (N.D. Ill. 2005); *Walker v. Calusa
Investments, LLC*, 244 F.R.D. 502 (S.D. Ind. 2007); *Kudlicki v. Capital One Auto Fin., Inc.*, 241
F.R.D. 603 (N.D. Ill. 2006); *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402 (E.D. Pa.
2010); *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 139 (D.N.J. 2009); *Chakejian
v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009); *Gillespie v. Equifax Info. Servs.,
LLC*, No. 05 C 138, 2008 WL 4614327, *4 (N.D. Ill. Oct. 15, 2008); *Williams v. LexisNexis Risk
Mgmt. Inc.*,No. CIV A 306CV241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007).

claims."); *Clerkin*, 2011 WL 3809912 at *4 (N.D. Cal. Aug. 29, 2011) ("Rule 12(b)(6) is not the appropriate procedural vehicle to challenge class allegations. Accordingly, Defendants' Rule 12(b)(6) motion concerning Plaintiffs' class allegations is denied."); *Whitson v. Bumbo*, No. C 07-05597 MHP, 2008 WL 2080855 at *1 (N.D. Cal. May 14, 2008) ("Defendant's concerns, therefore, are raised prematurely in the present Rule 12(b)(6) motion to dismiss. They will be more timely and appropriately addressed at a later date if and when plaintiff moves for class certification."); *Newport v. Dell Inc.*, No. CIV 08-096TUCCKJJCG, 2009 WL 1636248 at *13 (D. Ariz. June 8, 2009) ("Furthermore, the Court does not agree with Defendants' assertion that Plaintiff's class allegations should be dismissed at the pleading stage.").

## B.   Plaintiff Has Adequately Pled Class Claims.

Even if NTN's motion is not denied as premature, Plaintiff has adequately pled her class allegations.  NTN's perfunctory arguments are boilerplate, factually inaccurate, and dependent on outdated and inapposite caselaw.  NTN's position should be rejected.

### 1.   Plaintiff Has Sufficiently Alleged the Elements of Rule 23(a).

Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
   (1) the class is so numerous that joinder of all members is impracticable;
   (2) there are questions of law or fact common to the class;
   (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
   (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The allegations in Plaintiff's Complaint meet these requirements.

### a.   Plaintiff Has Sufficiently Alleged Numerosity.

NTN argues that the Plaintiff "must generally must proffer evidence of the number of members in the purported class, or at least a reasonable estimate of that number" and cites

procedurally inapposite post-discovery decisions that are deciding class certification motions or reviewing class certification decisions.  (NTN Mem. at 13.)  For purposes of a motion to dismiss, there is no evidentiary burden, but rather a burden to make proper allegations.  The Complaint alleges that "Each of the proposed classes and sub-classes consists of over 100 individuals." (Compl. ¶ 71.)  Allegations of 20-25 class members have been found to satisfy numerosity at the pleading stage, and 100 class members is more than enough to meet the requirements of Rule 23(a)(1).  *See Capps v. U.S. Bank Nat. Ass'n*, No. CV 09-752-PK, 2009 WL 5149135 (D. Or. Dec. 28, 2009) ("[T]he allegation that the class is estimated to contain in excess of 100 absent members constitutes more than a merely conclusory recitation of the numerosity element and plausibly suggests that the element will be satisfied."); *Dusan-Speck v. St. Charles Health Sys., Inc.*, 6:13-CV-00358-AA, 2013 WL 4083617 at *4 (D. Or. Aug. 9, 2013) (finding plaintiff's allegation estimating 20-25 class members sufficient "to fulfill the numerosity . . . element[] of a class action").

   b. <u>Plaintiff Has Sufficiently Alleged Commonality.</u>

 NTN has not offered a specific argument that Plaintiff has failed to allege commonality, but seeks dismissal on the basis that "plaintiff's complaint merely parrots Rule 23(a) requirements."  (NTN Mem. at 14.)  In fact, Plaintiff alleges and identifies several specific common questions of law and fact, including "[w]hether NTN violated the FCRA by failing to follow reasonable procedures" in reporting eviction and criminal records, whether NTN violated the FCRA and the TCRA by reporting antedated information, whether NTN violated the FCRA and the TCRA by failing to provide consumers with required disclosures, whether those FCRA and TCRA violations were willful, whether the TCRA violations were negligent as alleged in the alternative.  (Compl. ¶ 74.)  These allegations are sufficient at the pleading stage, particularly in

light of precedent indicating that similar questions have formed the basis for certification.  *See Gillespie*, 2008 WL 4614327 at*4 (finding commonality and certifying FCRA class when consumer reporting agency's standard procedure allegedly caused inaccurate reporting); *Capps*, 2009 WL 5149135 at *7 (finding plaintiff had adequately alleged commonality when "all class members share in common the questions whether they received final payment of wages on an untimely basis and whether U.S. Bank has a practice of failing to pay final wages in timely fashion, and that all class members' claims are governed by the same provisions of Oregon statutory law"); *Dusan-Speck*, 2013 WL 4083617 at *4 (denying defendant's motion to dismiss when plaintiff had "identifie[d] several common questions of law and fact relating to . . . defendant's employment practices").

c.   <u>Plaintiff Has Sufficiently Alleged Typicality</u>.

NTN argues without any additional explanation that "it is clear that plaintiff has not sufficiently pled . . . typicality."  (NTN Mem. at 14.)  Plaintiff alleges her claims are typical because "NTN uses highly automated procedures to prepare consumer reports, and the flaws in its procedures which led to the violations alleged herein are systemic."  (Compl. ¶ 72.)  Thus, Plaintiff's claims are typical of the class members because the harms she suffered are the same as those suffered by the proposed classes.  *Dusan-Speck*, 2013 WL 4083617 at *4 (finding plaintiff has properly plead typicality because plaintiff's harms were typical of class's harms); *Capps*, 2009 WL 5149135 at *7 (similar); see also *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.").

d.   <u>Plaintiff Has Sufficiently Alleged Adequacy</u>.

The Complaint states that "Myers will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation." (Compl. ¶ 73.) These allegations are sufficient. *Dusan-Speck*, 2013 WL 4083617 at *4 (finding allegations that plaintiff is a class member and that plaintiff has no conflicts with other class members sufficient to allege adequacy); *Capps*, 2009 WL 5149135 at *7 (finding adequacy allegations sufficient where plaintiff alleged "that the claims of all absent class members will be fully and fairly litigated, that the named plaintiffs' interests are not in conflict with those of the absent plaintiffs, and that the named plaintiffs are typical of the class.").

NTN's argument that Plaintiff's criminal charges render her inadequate is not well-taken. (NTN Mem. at 14-15.)  First of all, a plaintiff's criminal history rarely mandates a finding of inadequacy.  "Generally, unsavory character or credibility problems will not justify a finding of inadequacy unless related to the issues in the litigation."  *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C 01-21151 JW PVT, 2008 WL 2038047 at *4 (N.D. Cal. May 12, 2008) (internal quotation omitted); *Jane B. by Martin v. N.Y. City Dep't of Soc. Servs.*, 117 F.R.D. 64, 71 (S.D.N.Y. 1987) ("The inquiry, then, into the representatives' personal qualities is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit.").  NTN has identified nothing specific about Plaintiff's criminal background which would render her an inadequate class representative.  Not only does it defy common sense and human experience for NTN to claim that two DUI convictions are sufficiently indicative of moral depravity to render Plaintiff an inadequate class representative, NTN's argument also ignores the relationship between Plaintiff's history and the allegations in this case.  Plaintiff seeks to represent a class of people about whom NTN inaccurately and misleadingly reported criminal

charges.  To be an adequate representative for that class, Plaintiff necessarily would have to have criminal charges.   To deny her adequacy on that basis would result in similarly situated individuals being denied access to the courts through Rule 23 entirely.  *See Ingles v. City of New York*, No. 01 CIV. 8279(DC), 2003 WL 402565 at *7 (S.D.N.Y. Feb. 20, 2003) ("If the courts prevent persons with questionable moral characters from acting as class representatives, prisoners, mental patients, juvenile offenders or others capable of socially deviant behavior could never have an adequate representative and thus could never be certified." (quoting *Jane B.*. 117 F.R.D. at 71)).  NTN's premature adequacy arguments are wholly without merit.

### 2.    Plaintiff Has Sufficiently Alleged The Requirements of Rule 23(b)(3).

The Complaint sufficiently alleges predominance and superiority as required by Rule 23(b)(3).  NTN's predominance arguments are premised on a faulty understanding of the proof required for the FCRA and TCRA claims at issue, and NTN's arguments regarding superiority have been firmly rejected by the Ninth Circuit.

#### a.    Plaintiff Has Sufficiently Alleged Predominance.

Plaintiff has sufficiently alleged that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  As stated above, the Complaint identifies a number of common questions (Compl. ¶ 74), and resolving those questions will predominate over any questions affecting individual class members.

##### i.    *Common Questions Predominate for Plaintiff's Mismatched Eviction Records Claim (Count I).*

Citing out-of-circuit precedent, NTN asserts that to have adequately pled her reasonable procedures claims (Counts I and II) under 15 U.S.C. § 1681e(b), "plaintiff would have to show

the defendant did not follow reasonable procedures when each and every report containing errors was generated." (NTN Mem. at 9.)

NTN's statement of the standard for a § 1681e(b) violation is not the law in the Ninth Circuit:

> In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information. The FCRA does not impose strict liability, however—*an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures.*

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (emphasis added); *see also Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (stating similar standard). Per *Guimond*, to make out a prima facie case under 15 U.S.C. § 1681e(b), all Plaintiff must show is that there was an error or inaccuracy in her report. The burden then shifts to NTN to establish that the procedures used were reasonable. Thus, NTN's speculative argument about the necessity of individualized proof fails.

Moreover, Plaintiff has alleged that NTN routinely utilized unreasonable procedures in searching for and including mismatched eviction records in consumer reports. Specifically, the practices at issue for the Mismatched Eviction Records class are NTN's use of truncated name search and match protocols, i.e., matching with anyone who comes up as "Step* Myers" instead of "Stephanie Jo Myers" combined with a failure to cross-check the eviction reports found using the truncated name search to make sure that the addresses from which the evictions occurred are addresses associated with the consumer elsewhere on the report. Because class definition for the Mismatched Eviction Records class requires both a mismatch between the consumer's name and the name associated with the eviction record, and a mismatch between the eviction address and other addresses on the report, only those reports for which NTN failed to perform a name match

and address cross-check will be members of the class.  (Compl. ¶ 65.)  Accordingly, the class definition squarely presents a challenge to NTN's unreasonable procedures for selecting particular records for inclusion on consumer reports.

> ii.   *Common Questions Predominate For the Duplicative Reporting Class (Count II).*

Similar to the Mismatched Eviction Records class, the unreasonable procedure for the Duplicative Reporting Class is apparent from the face of the report:  NTN failed to cross-check to eliminate duplicative reporting.  This class is easily identifiable using NTN's databases.  As demonstrated from another NTN report that is the subject of another case, NTN's reports use a standard format.  (Declaration of E. Michelle Drake ("Drake Decl.") Ex. A.)  According to its website, the reports are generated using a "centralized bank of servers for instant nationwide use."  NTN, "About Us," http://www.ntnonline.com/about-us/ (Drake Decl. Ex. B).  Class members can be identified through searching NTN's databases to find all instances where the date and description of criminal charges listed on a report appear more than once.  Plaintiff has propounded discovery to determine the exact structure of NTN's databases in order to develop an electronic protocol for identifying class members.  (Drake Decl. Ex. C, Plaintiff's Interrogatories Nos. 3, 4.)  Notably, other consumer reporting agencies already make efforts to identify and delete duplicative reporting.  *See, e.g.*, *U.S. v. Hireright Solutions, Inc*, No. 12-cv-1313, Stipulated Final Judgment (Aug. 29, 2012) (ECF No. 3 at 4) (Drake Decl. Ex. D) (stating that HireRight is enjoined from "failing to follow reasonable procedures to prevent the inclusion of multiple entries for the same criminal offense in a single report").  The unreasonable procedure Plaintiff has alleged with respect to this class is the failure to make any effort to cross-check reports to eliminate duplication.  This procedure is squarely presented for all class members.

      *iii.*    *Common Questions Predominate For the Outdated Information Classes (Counts III-IV).*

NTN baselessly argues that every consumer report will need to be individually reviewed to determine whether it contains outdated information.  (NTN Mem. at 10.)  This will not be necessary.  NTN's reports are generated from a standard database, with searchable fields.  The database can be easily searched with formulaic scripts to determine the "offense date" and "disposition date," and to compare those dates to the date of the report.  Moreover, even if the reports did have to be reviewed by hand, the determination of whether the date on the report for the charge is more than seven years before the date of the report is objective and formulaic. Courts have certified similar FCRA classes defined by the existence of outdated information or other impermissible information in a report.  *Serrano*, 711 F. Supp. 2d 402 (certifying class alleging illegal reporting of outdated arrest information); *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1091-92 (C.D. Cal. 2011) *rev'd and remanded on other grounds sub nom. Radcliffe v. Experian Info. Solutions Inc.,* 715 F.3d 1157 (9th Cir. 2013) (certifying class of consumers who had gone through bankruptcy alleging illegal reporting of items that lacked information sufficient to establish that item was not discharged through bankruptcy, necessitating comparison of bankruptcy discharge date and reported item).

In the unlikely event that every report requires some level of individual review, it would be a simple, ministerial process to determine what information is on the individual's report.  This process would require no individual depositions, hearings, or trials, and would not defeat predominance because "such a task would neither be herculean, inhibiting, nor for that matter  . . . unique."  *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 n. 4 (7th Cir. 1974) (citations and quotations omitted); *see also Helde v. Knight Transp., Inc.*, No. C12-0904RSL, 2013 WL 5588311 (W.D. Wash. Oct. 9, 2013) (finding that "ministerial" damage calculations

that required review of existing records and not "depositions or additional fact-finding" did not defeat predominance); *Butto v. Collecto Inc.*, 290 F.R.D. 372, 383 (E.D.N.Y. 2013) (finding that determining whether loans were for business or consumer purposes did not defeat predominance); *cf. In re Monumental Life Ins. Co.*, 365 F.3d 408, 419 (5th Cir. 2004) (rejecting defendant's argument that because damages calculations required the construction of "thousands of [restitution] grids" that individual damages issues predominate over common issues and stating "predominance . . . does not contain a sweat-of-the-brow exception").

      iv.     *Common Questions Predominate for the Disclosure Classes (Counts V-VI).*

For the Disclosure classes, NTN incorrectly maintains that "the court must look at the information requested by and provided to each and every prospective class member."  (NTN Mem. at 10.)  Plaintiff has alleged that NTN automatically and systematically failed to provide the required disclosures.  (Compl. ¶¶ 74, 104, 110.)  Thus, based on the allegations in the Complaint, individual review of specific disclosures will not be necessary.  Further, the class members are readily identifiable as NTN surely has records detailing from whom it received requests, to whom it sent responses, and what material was sent.  As with the Outdated Information classes, even if review of these records is necessary, the required disclosures are standard forms making any sort of review entirely ministerial.

      b.     <u>Plaintiff Has Sufficiently Alleged Superiority.</u>

Plaintiff has alleged that a class action would be a superior method of adjudicating the claims at issue in this case.  The Complaint alleges, among other things, that "class members do not have an interest in pursuing separate actions against Defendant" and "class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments."  (Compl. ¶ 75); *see Dusan-Speck*, 2013 WL 4083617 at *4 (finding allegations that class

treatment would "avoid inconsistent or varying adjudications with respect to individual class members" and "joinder of the Class is impracticable" sufficient to allege superiority).

NTN relies on out-of-circuit district court cases to argue that FCRA statutory damages and the presence of a fee-shifting provision in the FCRA weigh against finding superiority. NTN's arguments regarding potential liability from statutory damages have been squarely rejected by the Ninth Circuit:  "To limit class availability merely on the basis of "enormous" potential liability that Congress explicitly provided for would subvert congressional intent." *Bateman v. Am. Multi-Cinema, Inc*., 623 F.3d 708, 723 (9th Cir. 2010); *see also id.* at 721 ("We therefore hold that the district court abused its discretion in considering the proportionality of the potential liability to the actual harm alleged in its Rule 23(b)(3) superiority analysis."); *White*, 2006 WL 2411420 at *9 ("As courts have repeatedly recognized, the statutory damages available under the FCRA are 'too slight to support individual suits.'" (quoting *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006))).  Further, the presence of fee-shifting does not defeat superiority as the prospect of fee-shifting is not a sufficient incentive to bring small-value individual claims.  *See, e.g., Tchoboian*, 2009 WL 2169883 at * 9 ("The Court is not convinced that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of the FCRA by individual actions of a scale comparable to the potential enforcement by way of class action."); *White*, 2006 WL 2411420 at *9 ("E-Loan's next argument is that the remedy that Congress has provided-individual statutory damages accompanied by a provision for attorney's fees-is a superior mechanism for resolving disputes under the FCRA. The Court disagrees . . .[W]ithout class actions, there is unlikely to be any meaningful enforcement of the FCRA by consumers whose rights have been violated.").

**3.   The Proposed Classes Are Adequately Defined.**

NTN's contentions challenging the proposed class definitions are premature.  *See, e.g.,* *Haley*, 2014 WL 1304007 at *6 (declining to resolve class definition issue on a motion to dismiss).  NTN's repeated couching of its speculative arguments in hypothetical language proves as much.  *See, e.g.,* NTN Mem. at 19-20 ("proposed definition *could potentially encompasses*[sic] (emphasis added)).  Further, NTN's arguments are not only premature but again are premised on a misunderstanding of Plaintiff's claims and the governing law.  For example, NTN misreads the requirement in the class definitions for the Texas subclasses that the report have "an address for the subject of the report located in Texas."  This requirement means that the consumer's current address on the report, at the time the report was issued, was in Texas.  NTN misunderstands the class definition as including anyone whose report has a Texas address located anywhere on the report, even if the address is old and for a former residence.  (NTN Mem. at 19.)  That reading is incorrect and would not make any sense as the TCRA only applies to Texas residents.  Tex. Gen. Bus. & Comm. Code § 20.01(2) ("'[C]onsumer' means an individual who resides in this state.").  The Court should disregard NTN's challenges to the class definitions because they are based on a misreading of the definitions.

a.   <u>The Mismatched Eviction Records And The Duplicative Reporting Classes (Counts I and II) Are Adequately Defined.</u>

Like its argument about predominance, NTN incorrectly asserts the Mismatched Eviction Records and Duplicative Reporting classes are overbroad because, an erroneous or duplicative report "by no means demonstrates a failure to follow reasonable procedures" under § 1681e(b).  (NTN Mem. at 17-18.)  As stated above, in the Ninth Circuit, an error or other inaccuracy in a report is prima facie evidence of unreasonable procedures, and as a result, the proposed classes

for NTN's §1681e(b) violations are not overbroad as only consumers with incorrectly listed eviction records are within the class.  *See Guimond,* 45 F.3d at 1533.

NTN's other argument challenging the breadth of the Mismatched Evictions Records class is unduly speculative and can be adequately addressed at the class certification stage.  NTN states:  "The proposed definition, which includes every single person who was the subject of a report containing a 'mismatched eviction record,' will necessarily include a substantial number of people who were not defendants in eviction actions."  (NTN Mem. at 16.)  While the precise meaning of NTN's argument is unclear, it appears that NTN believes that there will be many reports where a consumer is incorrectly listed as a plaintiff, rather than as a defendant, in an eviction action.  It is purely speculative that any such records exist, and even if they do, then if those records were generated because of the same faulty procedures that led to the inaccuracies in Plaintiff's record, those claims would arise under the same theory advanced by Plaintiff.  In any event, any resolution of this potential issue is best left until discovery has been taken and Plaintiff has moved for class certification.

> b.  The Texas Law Classes (Counts IV and VI) Are Not Overbroad.

NTN objects to the class definitions for the claims under Texas law because "the class is overbroad since it seeks to apply Texas law to all individuals who listed an address in Texas, regardless of how long they lived in Texas or whether they are, or ever were, Texas residents." (NTN Mem. at 19.)  Plaintiff does not seek to apply Texas law to non-Texas residents, and Texas law does not allow Plaintiff to do so.  Tex. Gen. Bus. & Comm. Code § 20.01(2) ("'[C]onsumer' means an individual who resides in this state.").  For this reason, Plaintiff's class definition requires that, at the time the report was issued, the address listed for the consumer on the report be in Texas.  NTN misreads Plaintiff's proposal as encompassing any address listed on the

report, which would make no sense, as opposed to the address which NTN listed as the current address on the report for the consumer.   Given that a criterion for class membership is that NTN's own records indicate the person was a Texas resident at the time of the report, it is hard to imagine a situation in which NTN will produce individualized evidence indicating the individuals identified as class members are not Texas residents, much less that such situations would be so common to, as a factual matter, predominate in the litigation.   At this point, however, NTN has brought forth no such individualized evidence, and NTN's objections to the Texas law class definition should be disregarded.

c.   <u>The Disclosure Classes (Counts V And VI) Are Adequately Defined.</u>

NTN objects to the definition in the Disclosure Classes because "[t]he proposed definitions offer no means whatsoever to ascertain its members or to distinguish those who might have a claim - i.e., those whose disclosures did not contain information required [by statute] from those who should not be included in the putative class."  (NTN Mem. at 19-20.)  As discussed above, this assertion ignores Plaintiff's factual allegations regarding NTN's failure to provide the required disclosures as systemic and automatic practice.  (Compl. ¶¶ 74, 104, 110.)  The class membership as defined, namely everyone who requested his or her file from NTN, is readily ascertainable.

In sum, NTN's motion to dismiss the Rule 23 class allegations is premature, poorly supported by inapposite and non-controlling law, and devoid of merit.  This Court should deny NTN's motion to dismiss the Rule 23 allegations under Rule 12(b)(6).

C.     **Plaintiff Has Sufficiently Alleged Willfulness.**

Under 15 U.S.C. § 1681n, "a 'willful' violation is one that was done knowingly or recklessly." *Haley,* 2014 WL 1304007 at *5 (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)). The Supreme Court has described a reckless violation:

> A company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Safeco*, 551 U.S. at 69.

Plaintiff has alleged that NTN knowingly or recklessly violated the FCRA and the TCRA. (Compl. ¶¶ 79, 85, 91, 97, 103, 109). For the Disclosures and Outdated Information claims and classes (Counts III-VI), the statutory provisions at issue are unambiguous, and command a consumer reporting agency to: (1) provide the required disclosures and (2) not report dismissed charges that are older than seven years. 15 U.S.C. §§ 1681c(2), 1681g(c)(2)(A); Tex. Bus. & Com. Code § 20.03(a)(2), (d); 20.05(4); *see also Haley*, 2014 WL 1304007 at *3 (finding that according to the "plain language" of the FCRA, "a record of arrest which includes a dismissed charge from over seven years ago is adverse information that consumer reporting agencies cannot disclose"). Plaintiff has alleged that NTN is aware of these long-standing statutory commands. (Compl. ¶ 77.) Because NTN knew of its obligations and did not comply, a plausible inference is that NTN knowingly, or at the very least, recklessly violated the FCRA and TCRA provisions regarding outdated information and disclosures. *See Pirian v. In-N-Out Burgers*, No. SACV061251DOCMLGX, 2007 WL 1040864 at *6 (C.D. Cal. 2007) (finding plaintiff had adequately alleged willfulness where plaintiff alleged that defendant was aware of the law and failed to comply); *Kubas v. Standard Parking Corp. IL*, 594 F. Supp. 2d 1029, 1032 (N.D. Ill. 2009) (same); *Singleton v. Domino's Pizza, LLC*, No. CIV.A. DKC 11-

1823, 2012 WL 245965 at *4 (D. Md. Jan. 25, 2012) ("[A]ssertions that a defendant was aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal.").

For the claims brought under 15 U.S.C. § 1681e(b) (Counts I, II), the statutory text is also unambiguous: consumer reporting agencies must follow reasonable procedures to ensure maximum possible accuracy in reporting information.  *See Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426, 436 (E.D. Pa. 2010) ("[Section 1681e(b)] has a plain and clearly ascertainable meaning.").  In addition to alleging NTN is aware of the requirements § 1681e(b) (Compl. ¶ 79), the Complaint sets forth additional allegations to establish willfulness.  For the mismatched eviction records claim, the Complaint alleges that NTN was aware that by doing a partial name match search, "it was doing an overbroad search," that NTN could contact landlords to verify the evicted party's identity but failed to do so, that NTN could have cross-referenced the report subject's residence history with the eviction information but failed to do so, and that NTN should have but "did not engage in any in-person human review or algorithmic review of the records it reported for Plaintiff which was aimed at eliminating reports of evictions associated with someone other than the subject of the consumer report."  (Compl. ¶ 80.)  For the duplicative reporting claim, the Complaint alleges that NTN was "aware or should have been aware that criminal record entries with substantial overlap . . . were likely duplicative" and that NTN failed to "engage in any in-person human review or any computer based algorithmic review of the criminal records it reported for Plaintiff which was aimed at eliminating duplicate reports of a single incident."  (*Id.* ¶ 86.)  These allegations are more than sufficient to state claims for willful violations of § 1681e(b).  The Ninth Circuit in *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412 n.1 (9th Cir. 2014), recently found allegations that defendant failed to develop algorithms to

prevent inaccuracies sufficient to state a willful violation.  *See Robins v. Spokeo Inc.*, No. 2:10-cv-05306-ODW-AGR, First Amended Complaint ¶¶ 23-24 (C.D. Cal. Feb. 17, 2011) (ECF No. 40) (Drake Decl. Ex. E); *see also, Smith*, 711 F. Supp. 2d at 434 (finding plaintiff had adequately alleged willfulness when plaintiff's sole criminal incident was reported multiple times on consumer report).

Notably, NTN does not argue that the TCRA or FCRA provisions at issue are unclear or ambiguous and does not challenge that the facts alleged establish FCRA or TCRA violations.  It merely argues that Plaintiff has not pled enough facts to show willfulness because Plaintiff allegedly has not shown "willful concealment or misrepresentation."  (NTN's Mem. at 21-22 (citing, among others, *Stevenson v. TRW Inc.*, 987 F.2d 288 (5th Cir. 1993)).  That is not the standard applicable in this District.  In *Harris v. Equifax Credit Info. Servs., Inc.*, No. CIV. 01-1728-JE, 2003 WL 23962280 at *2-3 (D. Or. Nov. 24, 2003), the court rejected that definition and defined a willful violation as one that is "knowingly or intentionally, or is committed with conscious disregard for the rights of others."  Further, the definition relied on by NTN is not the standard for willfulness as set forth by the Supreme Court in *Safeco*, which defines willfulness as a knowing or reckless violation of the statute.  Lastly, NTN's cited cases all concerned claims brought under the FCRA provisions that govern reinvestigation of disputed entries on a consumer report, *see* 15 U.S.C. § 1681i, which are fundamentally different claims from those at issue here.  *See, e.g., Stevenson*, 987 F.2d at 293 (5th Cir. 1993) (finding that consumer reporting agency had not willfully violated FCRA when it "provided [consumer's] credit report on request, did not conceal information about his report, investigated the disputed accounts, and attempted to resolve the complaints").

NTN's challenges to the sufficiency of Plaintiff's willfulness allegations are as specious as its challenges to Plaintiff's class allegations, and NTN's motion should be denied.

## CONCLUSION

For the above reasons, Defendant's motion to dismiss under Rule 12(b)(6) should be denied.


Dated: May 7, 2014

NICHOLS KASTER, PLLP

By: /s/E. Michelle Drake
E. Michelle Drake (*admitted Pro Hac Vice*)
Daniel C. Bryden (*admitted Pro Hac Vice*)
4600 IDS Center, 80 S 8th Street
Minneapolis, Minnesota 55402
Telephone:    (612) 256-3200
Facsimile:    (612) 338-4878
Email:        drake@nka.com
              dbryden@nka.com

Steve D. Larson, OSB No. 863540
Nadine A. Gartner, OSB No. 103864
STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840
Email:        slarson@stollberne.com
              ngartner@stollberne.com

**Attorneys for Plaintiff**