# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| STEPHANIE MYERS, individually and as a representative of the Classes,<br><br>       Plaintiff,<br><br>v.<br><br>NATIONAL TENANT NETWORK, INC., an Oregon Corporation, and N.T.N.D., Inc., a Texas Corporation,<br><br>       Defendant. | Case No. 5:14-cv-01072-RCL<br><br>**FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT**<br><br>Violations of the Fair Credit Reporting Act (15 U.S.C. § 1681, *et seq.*)<br><br>**DEMAND FOR JURY TRIAL** |

Stephanie Myers ("Myers" or "Plaintiff"), on behalf of herself and the Classes set forth below, and in the public interest, brings this Class Action Complaint against National Tenant Network, Inc. ("NTN") and N.T.N.D., Inc. ("N.T.N.D.") (collectively "Defendants"), and alleges as follows:

## INTRODUCTION

1.       This is a case about Defendants willfully ignoring both the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and Texas law governing consumer reporting agencies, Tex. Bus. & Com. Code § 20.01, *et seq.* ("TCRA").

2.       Specifically, Defendants have failed to abide by (1) the FCRA and TCRA's explicit prohibition on including adverse information that is older than seven years in their consumer reports, and (2) the FCRA and TCRA's requirements that Defendants maintain reasonable procedures to ensure maximum possible accuracy of information included in their consumer reports.  NTN has also failed to abide by the requirements of the FCRA and the TCRA regarding the content of disclosures that must be made to consumers who request copies of their files.

1

3.      The FCRA was enacted based on Congress's finding that there is a "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681a(4).

4.      Based on that finding, the FCRA imposes certain obligations on consumer reporting agencies which are designed to prevent consumer reporting agencies from including incomplete, inaccurate, or old information in consumer reports.  *See* 15 U.S.C. § 1681c(a)(5) (prohibiting inclusion of "any other adverse item of information, other than records of convictions of crimes, which antedates the report by more than seven years"); 15 U.S.C. § 1681e(b) (requiring consumer reporting agencies to "follow reasonable procedures to ensure maximum possible accuracy").

5.      As an additional form of consumer protection, the FCRA also requires consumer reporting agencies to disclose all information in a consumer's file to the consumer upon request, including the sources of information.  15 U.S.C. § 1681g(a)(2).  The FCRA further requires that when a consumer reporting agency provides this required disclosure, it includes specific information regarding the legal rights of the consumer.  *See* 15 U.S.C. § 1681g(c)(2)(A) (requiring the summary of rights prepared by the Consumer Financial Protection Bureau to be provided to the consumer at the same time that a written disclosure of the consumer's file is provided to the consumer).

6.      The TCRA has provisions which impose parallel obligations to those imposed by the FCRA, and which provide for cumulative damages.  *See* Tex. Bus. & Com. Code § 20.05(4) (prohibiting the inclusion of "a record of arrest, indictment, or conviction of a crime in which the date of disposition, release, or parole predates the consumer report by more than seven years" in a consumer report); Tex. Bus. & Com. Code § 20.03 (requiring consumer reporting agencies to

disclose all contents of a consumer file upon request and to provide "a set of instructions describing how information is presented" that is "clear accurate and understandable" as well as seven other specific items of information); Tex. Bus. & Com. Code § 20.09 (providing for cumulative remedies and civil liability for triple damages or statutory damages in the amount of $1,000 per violation for willful violations and $500 per violation for negligent violations).

7.      Despite NTN's long history of operating as a consumer reporting agency, and the fact that Defendants are well aware of their legal obligations under both federal and state law, Defendants place their business interests ahead of the legal rights of the consumers about whom they issue reports.

8.      Defendants willfully disregard consumers' rights pursuant to the FCRA and the TCRA, choosing instead to report inaccurate and outdated information, and failing to comply with legal requirements regarding the contents of consumer file disclosures.

9.      Specifically, Defendants violate the FCRA and the TCRA in three primary ways.

10.     *First,* Defendants include adverse information older than seven years in their reports.  Specifically, Defendants report records of arrest, indictment, or conviction of a crime in which the date of disposition, release, or parole predates the consumer report by more than seven years.

11.     *Second*, Defendants fail to maintain reasonable procedures to ensure the maximum possible accuracy of the information included in their reports.  Specifically, Defendants report the same adverse items of criminal information multiple times in the same report, making it appear as though the subject of the report has had more criminal charges than they have in fact had.

12.    Duplicative reporting is a well-established FCRA violation.   The FTC has prosecuted consumer reporting agencies under the FCRA for failing "to follow reasonable procedures to prevent the inclusion of multiple entries for the same criminal offense in the same report."   *See Exhibit 1*.   The FTC's efforts in this regard were well publicized and led to the FTC's then second largest settlement ever with a consumer reporting agency.   *See Exhibit 2.*

13.    In addition to engaging in duplicative reporting, Defendants also include information in their reports about persons other than the subject of the report, basing the information in their report merely on partial name matches, even when the name of the individual who is supposed to be the subject of the report differs obviously from the person to whom the reported information relates.

14.    Defendants do not obtain actual court records or otherwise attempt to resolve whether the information in their reports actually pertains to the subjects of the reports, even though such records are available.  Instead, Defendants misleadingly represent that the relevant records are filed "by name only" and that it is therefore "impossible" to be certain whether the indicated filings pertain to the individual who is the subject of a given report.

15.    *Third,* in providing responsive disclosures in response to consumer requests for their files, Defendants fail to include required information.   Specifically, Defendants do not provide:

a.    the third party criminal data providers from which Defendants purchase criminal records pursuant to 15 U.S.C. § 1681g(a)(2);

b.    a copy of the summary of rights that it is required to be provided by the FCRA, 15 U.S.C. § 1681g(c)(2)(A);

4

    c.   a "set of instructions describing how information is presented on the consumer

reporting agency's written disclosure of the consumer file," as required by

Tex. Bus. & Com. Code § 20.03(a)(2);

    d.   a written statement that explains in clear and simple language the consumer's

rights under the TCRA and which includes:

        (1) the process for receiving a consumer report or consumer file;

        (2) the process for requesting or removing a security alert or freeze;

        (3) the toll-free telephone number for requesting a security alert;

        (4) applicable fees;

        (5) dispute procedures;

        (6) the process for correcting a consumer file or report; and

        (7) information on a consumer's right to bring an action in court or arbitrate

a dispute, as required by Tex. Bus. & Com. Code § 20.03(d).

16.     Each of the above outlined practices benefits Defendants.

17.     Including inaccurate, old and duplicative information in consumer reports allows Defendants to avoid the costs associated with verifying or culling information in their reports.  It also allows Defendants to produce voluminous reports to their customers, thereby creating the illusion that Defendants have unearthed a wealth of information and provided their customers with something of value.  By being over-inclusive, Defendants also avoid the risk that a customer will be displeased because the customer subsequently learns that the information Defendants provided was not fully comprehensive.

18.     Defendants also benefit by failing to inform consumers of their rights under the FCRA and the TCRA, by failing to identify the sources of the information in their reports, and

by failing to provide consumers with the information they need to understand what is being reported about them.  By failing to fully inform consumers of their rights, and by failing to provide them with the tools they need to understand their reports, Defendants avoid the costs associated with consumers exercising those rights by, among other things, demanding reinvestigations and filing lawsuits.

19.     Defendants' failure to comply with the FCRA and the TCRA was routine and systematic.

20.     Accordingly, Plaintiff asserts claims on behalf of proposed Classes defined below, and seeks statutory damages, punitive damages, attorneys' fees, costs and all other relief available under the FCRA and the TCRA.

## THE PARTIES

21.     Plaintiff Myers is a resident of Temple, Texas and has resided in Texas at all times since June 2013.

22.     Defendant NTN is a corporation headquartered in Lake Oswego, Oregon.  NTN maintains its primary place of business at 525 SW First St., Suite 105, Lake Oswego, OR 97034.

23.     NTN is a consumer reporting agency as defined in the FCRA and the TCRA because it regularly engages wholly or partly in the practice of assembling or evaluating consumer credit information or other information on consumers to furnish consumer reports to third parties for monetary fees.

24.     NTN uses interstate means and facilities of interstate commerce for the purpose of preparing and furnishing consumer reports.

25.     NTN has been engaged in the provision of consumer reports since at least 1983. According to its website, NTN has provided consumer reports on over 15 million individuals.[1]

26.     Defendant N.T.N.D. is a corporation headquartered in Garden Ridge, Texas. N.T.N.D. maintains its primary place of business at 19115 FM 2252, Suite 14, Garden Ridge, Texas 78266.

27.     N.T.N.D. is a consumer reporting agency as defined in the FCRA and the TCRA because it regularly engages wholly or partly in the practice of assembling or evaluating consumer credit information or other information on consumers to furnish consumer reports to third parties for monetary fees.

28.     N.T.N.D. uses interstate means and facilities of interstate commerce for the purpose of preparing and furnishing consumer reports.

29.     N.T.N.D. is an independently owned franchise of NTN and has been engaged in the provision of consumer reports since at least 2000.

## JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question.

31.     This Court has personal jurisdiction over Defendants because N.T.N.D. is headquartered in this District and both Defendants conduct substantial business in this District.

32.     Venue is proper pursuant to 28 U.S.C. § 1392(b)(2) because a substantial part of the events giving rise to this action occurred in this District; and 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in this District.

---

[1] *See* http://www.ntnonline.com/, last accessed May 21, 2015.

## STATUTORY BACKGROUND

33.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.  Despite the structure put in place by the FCRA, serious problems persist: by some measures, there are material errors in twenty-six percent of consumers' reports.[2]

34.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

35.     Congress was particularly concerned about inaccuracies in consumer reports. Accordingly, Congress required consumer reporting agencies to follow "reasonable procedures to ensure maximum possible accuracy" in consumer reports.  15 U.S.C. § 1681e(b).  In this Complaint, this requirement will be referred to as the "maximum possible accuracy requirement."

36.     In addition, and in further service of the goal of maximum possible accuracy, both Congress and the Texas legislature require that consumer reporting agencies disclose consumers' full files upon request.  *See* 15 U.S.C. § 1681g and Tex. Bus. & Com. Code § 20.03.

37.     Congress and the Texas legislature require that specific pieces of information concerning consumers' rights and the contents of reports be provided along with these

---

[2]   U.S. Federal Trade Commission, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003* (December 2012), available at www.ftc.gov/os/2013/02/130211factareport.pdf, last accessed May 21, 2015.

disclosures.  The statutory provisions which provide consumers with the right to receive certain legal disclosures along with their consumer files are 15 U.S.C. § 1681g(c)(2)(A) (requiring consumers to be provided with a Summary of Rights prepared by the CFPB) and Tex. Bus. & Com. Code §§ 20.03(a)(2) and 20.03(b) (requiring "clear" "accurate" and "understandable"… "instructions describing how information is presented on the consumer reporting agency's written disclosure of the consumer file") and § 20.03(d) (requiring seven other discrete pieces of information pertaining to the consumer's rights to be provided along with the disclosures).  In this Complaint, the legal requirements specifying the disclosures which must be provided to a consumer in connection with a response to a consumer's request for their file will be referred to as the "disclosure of legal rights requirements."

38.     The FCRA also requires that the consumer reporting agency disclose "the sources of the information" in the consumer's file.  15 U.S.C. § 1681g(a)(2).

39.     As set forth below, Defendants systematically violated the maximum possible accuracy requirement, the disclosure of legal rights requirements, and the disclosure of sources of information requirement by furnishing consumer reports that contained inaccurate, misleading and outdated information, by failing to provide consumers with the full required disclosures of their legal rights, and by failing to identify the sources of information in consumers' files.

## ALLEGATIONS RELATING TO PLAINTIFF MYERS

40.     On or about June 26, 2013, Defendants provided the consumer report attached hereto as Exhibit 3 ("Myers Consumer Report" or "Report") to Plaintiff's then-employer, Ivanhoe Duplexes.

41.     The Report was provided to Ivanhoe Duplexes by Defendants through an online system called NTNOnline.

42.     NTNOnline is operated by NTN and is accessed by subscribers, such as Ivanhoe Duplexes, who are signed up for access to the database through NTN franchises, including N.T.N.D.

43.     NTN franchises, including N.T.N.D., are responsible for gathering the eviction filing and tenant performance information that is included on the reports that are provided to subscribers.  The NTN franchises collect this information from a variety of sources, including court runners and other consumer reporting agencies.

44.     Once the franchises have collected eviction data, they then compile that information and manually enter it into the NTNOnline database.

45.     NTN manages and owns the NTNOnline database.

46.     The consumer reports that are sent to end users, such as Ivanhoe Duplexes, are generated from the NTNOnline database.

47.     For end-users who are not franchise customers, NTN sells the reports directly to the customers, and is solely responsible for assembling the reports and performing Quality Assurance ("QA") on the reports in NTNOnline.

48.     For customers who are franchise customers, NTN and the franchisee (including N.T.N.D.) divide their reporting responsibilities.  NTN procures data from other consumer reporting agencies, such as Equifax, and also procures information from its franchisees, such as N.T.N.D.

49.     The information NTN receives from the other consumer reporting agencies, such as Equifax, is uploaded into NTNOnline.

50.     The information NTN receives from its franchisees, such as N.T.N.D. includes eviction histories.  This information is uploaded into NTNOnline by the franchisees.

51.     For franchise generated subscribers, NTN assembles reports that can be sent to end users.   The franchisee is responsible for performing QA on the reports before they are provided to the end user.

52.     NTN franchises, including N.T.N.D., are responsible for all QA reviews on the reports that are ultimately provided to franchise-generated subscribers.   However, each NTN franchise can choose whether or not it actually performs QA on the reports before they are provided to subscribers.   If the NTN franchise chooses to release the report without reviewing it, the report is sent from NTNOnline directly to the end user.

53.     NTN franchises have a high incentive not to perform QA on the reports or to not fully review reports because of the costs associated with QA and because part of NTN's advertising strategy is to present itself to subscribers as providing instant access to consumer reports 24 hours a day, seven days a week.   *See* www.ntnonline.com/resident-screening/solutions (last accessed May 21, 2015).

54.     NTN franchises are also responsible for setting the name matching criteria that is used to return results from the NTNOnline system.   A franchise may choose to set the minimum matching criteria such that a match is returned if only the first three letters of the first name match the first three letters of the applicant's first name.   For example, an applicant name of Jane Smith would also return results for ***Jan***et Smith or ***Jan*** Smith or ***Jan***elle Smith.

55.     This lax matching standard combined with Defendants' failure to cross-check an applicant's address with the addresses associated with a returned record, results in a high probability that the returned records for a particular applicant may include information belonging to persons other than applicant.

56.     Both NTN and N.T.N.D. are consumer reporting agencies.  Both corporations sell reports for monetary fees.  Both corporations assemble consumer credit information and other consumer information, including eviction data, for the purpose of furnishing reports to third parties.  Both corporations use the internet, the mail, and other facilities of interstate commerce for the purpose of preparing and furnishing these reports.

**<u>Inaccurate Reporting</u>**

57.     The Myers Consumer Report is inaccurate for numerous reasons.

58.     The Report contains inaccurate information regarding eviction proceedings.

59.     The Report contains information about two eviction filings which pertain to individuals named Stephen L. Myers and Stephen Myers.  Neither of these individuals are Plaintiff, and Plaintiff never lived at the addresses reflected as the addresses from which the evictions presumably occurred.

60.     The Report indicates that the "Name Screened" in the section of the Report that pertains to eviction proceedings was not the Plaintiff's name, Stephanie Myers, but rather "Myers, Step*," where the asterisk indicated an open-ended search for all first names beginning with those four letters.  *Exhibit 3 at 3.*

61.     In the section of the Report that pertains to eviction proceedings, the Report states that "All Civil Court Records are filed by NAME ONLY.  This makes it impossible to be certain that the following filings involve your applicant. Please call the plaintiff listed for more information." *Id.*

62.     This foregoing statement is not true.  Indeed, based on contents of the Report itself, it is evident that the civil filings include the address of the property from which the

eviction occurred.  In some instances, based on this address information, the recipient of the report is provided with the name and address for the landlord.

63.     However, NTN and its franchises, including N.T.N.D., do not contact the landlord on their own to verify the identity of the individual who was the subject of the eviction filing. Rather, NTN and its franchises encourage the recipient of the report to contact the landlord to verify the identity of the evicted individual.  *Id.*

64.     Moreover, in connection with providing a report on Plaintiff, Defendants reported information about Plaintiff's residence history.  Notably, none of the residences reported by Defendants reflect that Plaintiff had ever lived at the addresses from which the eviction proceedings stemmed.

65.     In fact, the residence history provided by Defendants indicates that Plaintiff had been consistently residing at a single address in Austin, TX, during the time period of the two eviction actions, which both related to addresses in Fort Worth, TX.

66.     NTN's procedures are such that it reports evictions based solely on partial name matches.  This stands in direct contrast to its apparent policy for reporting criminal records which requires an "Exact Name and DOB Match."  *See Ex. 3 at 6.*

67.     Despite knowing that they are reporting evictions based only on partial name matches, neither NTN nor its franchises make any effort to verify that the identity of the individual evicted is the same as the individual who is the subject of the report.

68.     The NTN database does not use its computing capabilities to cross-reference the subject's residence history with the addresses at which the evictions occurred and neither NTN nor its franchises perform a manual review of this information to ensure that the addresses match.

69.     Nor do NTN or its franchises make any effort to contact the landlords who conducted the evictions to determine whether the individual who was evicted is the same as the subject of the report.

70.     NTN and its franchises also do not procure the entire eviction file from the court to determine whether the contents of the file contain information which would confirm the match or indicate that it is improper.

71.     The procedures adopted by NTN and its franchises, including N.T.N.D., pursuant to which they rely solely on partial name matches and ignore information in their own reports, are patently unreasonable and are not designed to ensure maximum possible accuracy.

72.     In addition to containing inaccurate information about evictions that do not pertain to Plaintiff, the Report also reports single items of adverse information multiple times in the same report, making it appear as though there is more adverse information than actually exists.

73.     Specifically, the Statewide (instant) Criminal Search portion of the Report includes eight separate notations of Myers being involved in an "offense."  Each "offense" is presented as though it is a unique incident, with a separate space for each offense that purports to include a "case number," "cause number," "offense level," "file date," "offense date," "arrest date," "charge date," "disposition," "disposition date," "fine," "court fee," "offense county," "plea," "plea date," and "statute."

74.     In fact, Myers has been charged with four criminal offenses, not eight. Nevertheless, these four charging incidents are reflected on her Report in eight separate entries. The entries are not chronologically arranged, which causes the Report to be confusing and misleading because it is not clear that numerous entries pertain to the same incident.  It appears

14

that the second, fifth and sixth denotations of "offense" relate to a single incident, and that the first, seventh and eighth entries relate to another single incident.

75.     In addition to not being chronological, these multiple entries are misleading and unclear about precisely which offenses they pertain to, because some entries do not contain basic information that could be used to determine that the duplicate entries in fact pertain to the same incident, such as the case number, file number, charge date, disposition, entry of a plea or other information.

76.     Moreover, these duplicative entries contain internally inconsistent information in certain categories.  For example, the second, fifth and sixth entries all contain different information about the ultimate disposition of the charges, with one "offense" title having three separate dispositions listed, including "conviction," "final conviction-fine only," and "motion to revoke denied."  Moreover, one of the entries indicates that there was a guilty plea, while for two others the "plea" column is blank.

77.     Similarly, Defendants' reporting of the first, seventh, and eighth entries misleadingly suggests that there were multiple charges when in fact there was only a single charge.  The first and seventh entries contain inconsistent information about the outcome of the charge, with the first entry indicating Myers was "CONVICTED" by guilty plea and subject to a fine of $4,000 and a court fee of $417, the seventh entry indicating she had a "conviction-formal probation" and no fine or court fee, with no indication of a guilty plea, and the eighth entry containing no information about the disposition whatsoever, but indicating she had no fine and no court fee.

78.     NTN and its franchises' procedures with respect to the reporting of criminal convictions are unreasonable and not designed to ensure maximum possible accuracy because, among other reasons, NTN and its franchises:

a.  Failed to reasonably screen results to ensure that each charge was only reported once.  NTN and its franchises failed to remove duplicative entries, even when some of those entries contained some overlapping fields (such as the same offense and arrest date).

b.  Failed to present the information reported in a chronological or other intelligible order, which might make it possible for a recipient to easily discern duplicate entries.

c.  Failed to obtain copies of the actual criminal records at issue from the courts of record, which would have made manifestly clear how many charges the subject of each report faced, and how many of the reported charges were in fact duplicates.

d.  Failed to ensure that each entry on its criminal history reports contained information in every field, which makes the identification of duplicate information extremely difficult.  For example, if the "case number" field had been filled in for every entry on Plaintiff's Report, discerning duplicates would have been simple.  However, Defendants chose to leave that field blank in many entries.

**Inclusion of Outdated Information**

79.     In addition to reporting criminal information in a misleading fashion, the Report also includes outdated information.  Specifically, the third and fourth "offenses" reported in the

Statewide (instant) Criminal Search both indicate that the charges were dismissed, and stemmed from incidents with offense dates which predate the Report by more than seven years.

80.     The Report indicates that the third charge stemmed from an arrest on August 29, 2005 with a filing on October 20, 2005 and a dismissal on July 31, 2006.  The dismissal is within the allowable seven year reporting period under Texas law (which measures the reporting period from the date of disposition, *see* Tex. Bus. & Com. Code § 20.05(4)) but outside the reporting period for federal law, which prohibits the reporting of records of arrests based on "date of entry."  *See* 15 U.S.C. § 1681c(a)(2).  Accordingly, Defendants were prohibited from reporting this information under the FCRA.

81.     The Report indicates that the fourth charge stemmed from an offense date of May 20, 2003, a "file date" of February 11, 2004, and resulted in a "dismissed-other" on February 10, 2005.  All of these events are outside the seven year reporting period allowed under both the TCRA and the FCRA.

**Failure to Provide Required Disclosures**

82.     Prior to November 25, 2013, Plaintiff requested her full consumer file from Defendants.  She was directed to send her request to NTN's headquarters in Lake Oswego, Oregon.  Despite being directed to send her request to NTN, NTN maintains that it was N.T.N.D's responsibility to provide the information.   On November 25, 2013, Defendants acknowledged her request and sent her the documents attached hereto as Exhibit 4.

83.     Defendants' response failed to include any of the following documents:

a.  a copy of the summary of rights that it is required to be provided by the FCRA, 15 U.S.C. § 1681g(c)(2)(A);

b.   a "set of instructions describing how information is presented on the consumer

reporting agency's written disclosure of the consumer file," as required by

Tex. Bus. & Com. Code § 20.03(a)(2); and

c.   a written statement that explains in clear and simple language the consumer's

rights under the TCRA and which includes:

(1) the process for receiving a consumer report or consumer file;

(2) the process for requesting or removing a security alert or freeze;

(3) the toll-free telephone number for requesting a security alert;

(4) applicable fees;

(5) dispute procedures;

(6) the process for correcting a consumer file or report; and

(7) information on a consumer's right to bring an action in court or arbitrate

a dispute, as required by Tex. Bus. & Com. Code § 20.03(d).

84.    These omissions matter to Plaintiff and other consumers.  Defendants' failure to provide information about the consumers' legal rights and remedies deprives consumers, like Myers, of information regarding how they can most effectively correct inaccuracies in their reports.

85.    The failure to abide by the requirements of Tex. Bus. & Com. Code § 20.03(a)(2) is similarly detrimental, as the Report contains a variety of incomprehensible codes and abbreviations, including numerous abbreviations about account status on the Experian Credit Report, NCIC codes on the Statewide (instant) Criminal Search, abbreviations such as "MA" for the offense level, and the number "3" as the sole entry in the field titled "court name."

18

## CLASS ACTION ALLEGATIONS

86.     Myers asserts Count 1 on behalf of the "Mismatched Eviction Records Class,"

defined as follows:

> **Mismatched Eviction Records Class:**  All individuals in the United States who were the subject of a consumer report furnished by NTN and its franchises which:
>
> 1) Includes eviction records for a person whose name is not an exact match to the consumer's name;
> 2) Includes an eviction record associated with an address that was not provided as a previous address for the consumer by the entity requesting the report; and
> 3) Includes an eviction record associated with an address that is not listed as an "additional address" for the subject of the report elsewhere in the report.
>
> The Mismatched Eviction Records Class consists of all persons who satisfy the three above criteria who were the subject of a consumer report furnished by NTN and its franchises at any time which occurred between the date which is two years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

87.     Myers asserts Count 2 on behalf of the "Duplicative Reporting Class" defined as

follows:

> **Duplicative Reporting Class:**  All individuals in the United States who were the subject of a consumer report furnished by NTN and its franchises which includes more than one non-identical notation regarding an "offense" where the duplicative notations regarding the "offense" refer to a single incident.  The Duplicative Reporting Class consists of all persons who satisfy this criterion who were the subject of a consumer report furnished by NTN and its franchises at any time which occurred between the date which is two years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

88.     Myers asserts Count 3 on behalf of the "Outdated Information Class," defined as

follows:

> **Outdated Information Class:**   All individuals who were the subject of a consumer report furnished by NTN and its franchises which includes an entry for an "offense" where the date of the earlier of the "arrest date," "file date," "offense date," or "charge date," antedates the date of the report by more than seven years. The Outdated Information Class consists of all persons who satisfy this criterion

and who were the subject of a consumer report furnished by NTN and its franchises at any time which occurred between the date which is two years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

89.     Myers asserts Count 4 on behalf of the "Texas Outdated Information Class,"

defined as follows:

> **Texas Outdated Information Sub-Class:**  All individuals whose reports include an address for the subject of the report located in Texas and who were the subject of a consumer report furnished by NTN and its franchises which includes an entry for an "offense" where the "disposition date" antedates the date of the report by more than seven years.  The Texas Outdated Information Sub-Class consists of all persons who satisfy this criterion and who were the subject of a consumer report furnished by NTN and its franchises at any time which occurred between the date which is two years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

90.     Myers asserts Count 5 on behalf of the "Federal Disclosures Class" defined as

follows:

> **Federal Disclosures Class:**  All individuals who were the subject of a consumer report furnished by NTN and its franchises and to whom NTN provided a disclosure from the individual's consumer file after receiving a request from the consumer.  The Federal Disclosures Class consists of all persons who satisfy this criterion and to whom NTN made such a disclosure at any time which occurred between the date which is two years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

91.     Myers asserts Count 6 on behalf of the "Texas Disclosures Sub-Class," defined as

follows:

> **Texas Disclosures Sub-Class:**  All individuals whose reports include an address for the subject of the report located in Texas and to whom NTN and its franchises provided a disclosure from the individual's consumer file after receiving a request from the consumer.  The Texas Disclosures Sub-Class consists of all persons who satisfy this criterion and to whom NTN and its franchises made such a disclosure at any time which occurred between the date which is two years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

92.   <u>Numerosity</u>:   The Classes are so numerous that joinder of all class members is impracticable.  Each of the proposed Classes and Sub-classes consists of over 100 individuals.

93.   <u>Typicality</u>:   Myers' claims are typical of the class members' claims. Defendants use highly automated procedures to prepare consumer reports, and the flaws in their procedures which led to the violations alleged herein are systematic.

94.   <u>Adequacy</u>:   Myers will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation.

95.   <u>Commonality</u>:  Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual class members, including but not limited to:

    a.   Whether Defendants violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy by *inter alia*,

        i.   Including eviction information on individuals other than the subject of the consumer report; and
        ii.   Including multiple non-identical entries pertaining to a single criminal incident;

    b.   Whether Defendants violated the FCRA by including information which is adverse to the consumer and antedates the report by more than seven years;

    c.   Whether Defendants violated the TCRA by including in their reports records of arrest, indictment, or conviction of a crime in which the date of disposition release, or parole predates the consumer reports by more than seven years;

    d.   Whether Defendants violated the FCRA by failing to provide consumers with the required summary of rights when it made disclosures to consumers upon the consumers' requests;

    e.   Whether Defendants violated the FCRA by failing to disclose the sources of information in consumers' files;

21

f.  Whether Defendants violated the TCRA by failing to provide consumers with required information in connection with their responses to consumers' requests;

g.  Whether Defendants' FCRA violations were willful;

h.  Whether Defendants' TCRA violations were willful;

i.  Whether Defendants' TCRA violations were negligent;

j.  The proper measure of statutory and punitive damages; and

k.  The proper form of declaratory relief.

96.  Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA and TCRA.  Class members do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claims is small compared to the expense and burden of individual prosecution.  Myers is unaware of any claims currently being pursued in this lawsuit which have been brought against Defendant by any class members on an individual basis or class basis in any other court.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

97.  NTN's database administrators have testified that the names and addresses of the class members are available from the NTNOnline database maintained by NTN.  The

NTNOnline administrator's testimony indicates that the identity of class members can be found by searching the completed consumer reports stored in the NTNOnline database for the class criteria set forth in the class definitions.  The data, including names and addresses, associated with the individual consumers who fall within the class definitions can then be exported to create a class list.

## ALLEGATIONS ESTABLISHING DEFENDANTS' CONDUCT WAS WILLFUL

98.    In addition to the allegations set forth above, Plaintiff sets forth below additional reasons why each specific violation was committed willfully:

a.  The FCRA was enacted in 1970; Defendants have had over four decades to become compliant; the TCRA has been in place for over a decade;

b.  NTN is a large corporation with access to legal advice through its own general counsel's office and outside counsel.  N.T.N.D. is a franchise of NTN and has access to legal advice through NTN's general counsel's office and outside counsel as well as its own counsel.  Yet, there is no contemporaneous evidence that Defendants determined that their conduct was lawful;

c.  Defendants are consumer reporting agencies, and their primary business is the provision of consumer reports, which are strictly regulated by the FRCA and TCRA.  Defendants are familiar with these statutes, and what they must do to comply with them; and

d.  Defendants' conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the FCRA and the TCRA.

## COUNT I
### Defendants Report Inaccurate Eviction Information
### 15 U.S.C. § 1681e(b)
### *Asserted on Behalf of the Mismatched Eviction Records Class*

99.     Defendants have violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy of eviction-related information.  *See* 15 U.S.C. § 1681e(b).  This failure has led to Defendants falsely reporting that members of the Mismatched Eviction Records Class were defendants in evictions actions.

100.    The foregoing violations were willful.  Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and the other Mismatched Eviction Records Class members.

101.    Defendants' willful conduct is reflected by, *inter alia*, the reasons listed above, as well as the following:

a.   The statutory text regarding the need for reasonable procedures to ensure maximum possible accuracy is clear and free from ambiguity.

b.   Defendants were aware that in doing a search for a partial name match, they were doing an overbroad search which would misreport eviction information.

c.   Defendants were aware that they could contact the landlords who initiated the reported eviction suits to inquire whether the defendant in that suit was the same person who was the subject of the report, but they chose not to do so.

d.   Defendants failed to cross-reference their residence history information with their eviction information for internal inconsistencies, including reporting that the subject of a report was living at one location at the same time they were allegedly being evicted from another location.

e.   Defendants did not engage in any in-person human review or any computer based algorithmic review of the records they reported for Plaintiff which was aimed at eliminating reports of evictions associated with someone other than the subject of the consumer report.  NTN could have easily established a computer based algorithm to filter the database from which it produces consumer reports to ensure that evictions which resulted from addresses that could not be verified for the subject of the report were either not reported or were verified through additional investigation prior to being reported.  NTN is well aware of the ability to use algorithms to set reporting parameters, as is demonstrated by its inclusion of the "partial name match" algorithm it used to report evictions, and its use of an "exact name and DOB match" algorithm to report criminal offenses.  *See Exhibit 3*.

102.   Plaintiff and the Mismatched Eviction Records Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

103.   Plaintiff and the Mismatched Eviction Records Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

104.   Plaintiff and the Mismatched Eviction Records Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT II
### Defendants Report Duplicate Criminal Convictions
### 15 U.S.C. § 1681e(b)
### *Asserted on Behalf of the Duplicative Reporting Class*

105.   Defendants have violated the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of criminal record information.  *See* 15 U.S.C. § 1681e(b).

This failure has led to Defendants reporting criminal charges against members of the Duplicative Reporting Class multiple times in the same report.

106.    The foregoing violations were willful.  Defendants acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other Duplicative Reporting Class members.

107.    Defendants' willful conduct is reflected by, *inter alia*, the reasons listed above, as well as the following:

a.   The statutory text regarding the need for reasonable procedures to ensure maximum possible accuracy is clear and free from ambiguity.  It is well established that duplicative reporting of single criminal incidents violates the FCRA.  *See Exhibit 1; Smith v. HireRight Solutions*, 711 F. Supp. 2d 426 (E.D. Pa. 2010) (upholding claim for willful duplicate reporting in violation of 15 U.S.C. § 1681e(b)).

b.   Defendants were aware or should have been aware that criminal record entries with substantial overlap (such as listing the same charge and arrest date) were likely duplicative.

c.   Defendants did not engage in any in-person human review or any computer based algorithmic review of the criminal records they reported for Plaintiff which was aimed at eliminating duplicate reports of a single incident.  NTN could have easily established a computer based algorithm to filter the database from which it produces consumer reports to ensure that criminal offenses with similar offense dates, charges, or disposition dates were reviewed and aggregated prior to being reported.  NTN is well aware of the ability to use

26

algorithms to set reporting parameters, as is demonstrated by its inclusion of the "partial name match" algorithm it used to report evictions, and its use of an "exact name and DOB match" algorithm to report criminal offenses. *See Exhibit 3.*

    d.  By requesting copies of the actual criminal records at issue, Defendants could have determined which entries were duplicative, but they failed to do so.

108.    Plaintiff and the Duplicative Reporting Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

109.    Plaintiff and the Duplicative Reporting Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

110.    Plaintiff and the Duplicative Reporting Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

### <u>COUNT III</u>
### Defendants Report Outdated Information
### 15 U.S.C. § 1681c(a)
### *Asserted on Behalf of the Outdated Information Class*

111.    Defendants have violated the FCRA by reporting records of arrests and criminal charges that antedate the reports by more than seven years. *See* 15 U.S.C. § 1681c(a)(2).

112.    The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and the other Outdated Information Class members.

113.    Defendants' willful conduct is reflected by, *inter alia*, the reasons listed above, as well as the following:

27

a. The statutory text regarding the reporting of outdated information is clear and free from ambiguity. *See* 15 U.S.C. §§ 1681c(a)(2). The rule itself is relatively simple and easy to apply, and yet Defendants failed to follow it.

b. Case law on this topic is also clear – reporting dismissed charges after seven years is a violation of the FCRA. *See, e.g. Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239 (E.D.N.Y. 2012); *Serrano v. Sterling Testing Sys., Inc.*, 557 F. Supp. 2d 688 (E.D. Pa. 2008).

c. Defendants knew that their reports contained dismissed criminal charges older than seven years because the inclusion of that information was obvious from the face of the reports.

d. Nothing in NTN's full file disclosure to Plaintiff indicates that Defendants undertook any quality control measures whatsoever to preclude information about old dismissed charges from being included in their reports.

e. NTN could have easily established and used a computer based algorithm to filter the database from which it produces consumer reports to ensure that charges with dispositions such as "dismiss!" or "nolle pross" or "not guilty" were excluded if they were older than seven years, but failed to employ any such algorithm to filter its reports. NTN is well aware of the ability to use algorithms to set reporting parameters, as is demonstrated by its inclusion of the "partial name match" algorithm it used to report evictions, and its use of an "exact name and DOB match" algorithm to report criminal offenses. *See Exhibit 3.*

114.    Plaintiff and the Outdated Information Class members are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

115.    Plaintiff and the Outdated Information Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

116.    Plaintiff and the Outdated Information Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**COUNT IV**
**Defendants Report Outdated Information On Texas Residents**
**Tex. Bus. & Com. Code § 20.05(4)**
***Asserted on Behalf of the Texas Outdated Information Class***

117.    Defendants have violated the TCRA by reporting records of arrest, indictment, or conviction of a crime in which the date of disposition, release, or parole predates the consumer report by more than seven years. *See* Tex. Bus. & Com. Code § 20.05(4).

118.    The foregoing violations were willful.  Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and the other Texas Outdated Information Class members.

119.    Defendants' willful conduct is reflected by, *inter alia*, the reasons listed above, as well as the following:

    a.   The statutory text regarding the reporting of outdated information is clear and free from ambiguity.  *See* Tex. Bus. & Com. Code § 20.05(4).  The rule itself is simple and easy to apply, and yet Defendants failed to follow it.

    b.   Nothing in NTN's full file disclosure to Plaintiff indicates that Defendants undertook any quality control measures whatsoever to preclude information about old dismissed charges from being included in their reports.

29

c. NTN could have easily established and used a computer based algorithm to filter the database from which it produces consumer reports to ensure that charges with dispositions such as "dismiss!" or "nolle pross" or "not guilty" were excluded if they were older than seven years, but failed to employ any such algorithm to filter its reports.  NTN is well aware of the ability to use algorithms to set reporting parameters, as is demonstrated by its inclusion of the "partial name match" algorithm it used to report evictions, and its use of an "exact name and DOB match" algorithm to report criminal offenses. *See Exhibit 3.*

120. Plaintiff and the Texas Outdated Information Class members are entitled to statutory damages $1,000 for each and every one of these violations, pursuant to Tex. Bus. & Com. Code § 20.09.

121. In the alternative, Defendants' violations were negligent, for all the reasons listed above, entitling Plaintiff and the Texas Outdated Information Class to $500 for each and every one of these violations pursuant to Tex. Bus. & Com. Code § 20.09.

122. Plaintiff and the Texas Outdated Information Class members are further entitled to recover their costs and attorneys' fees, pursuant to Tex. Bus. & Com. Code § 20.09.

**<u>COUNT V</u>**
**Defendants Failed To Provide Federally Mandated Disclosures**
**15 U.S.C. § 1681g (c)(2)(a)**
***Asserted on Behalf of the Federal Disclosure Class***

123. Defendants have violated the FCRA by failing to provide consumers who receive a copy of their reports with a summary of their rights under the FCRA.  *See* 15 U.S.C. § 1681g(c)(2)(a).

30

124. The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and the other Federal Disclosure Class members.

125. Defendants' willful conduct is reflected by, *inter alia*, the reasons listed above, as well as the following:

    a. The statutory text regarding the provision of a summary of rights is clear and free from ambiguity. 15 U.S.C. § 1681g(c)(2)(a).

    b. The rule created by 15 U.S.C. § 1681g(c)(2)(a) is exceedingly simple and easy to follow. However, Defendants simply failed to comply.

    c. NTN's response to Myers is a form response letter, generated automatically, and included no summary of rights.

126. Plaintiff and the Federal Disclosure Class members are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

127. Plaintiff and the Federal Disclosure Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

128. Plaintiff and the Federal Disclosure Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

<u>**COUNT VI**</u>
**Defendants Failed To Provide Texas-Mandated Disclosures**
**Tex. Bus. & Com. Code § 20.03(d)**
***Asserted on Behalf of the Texas Disclosures Subclass***

129. Defendants have violated the TCRA by failing to provide consumers who receive a copy of their reports with a written statement that explains in clear and simple language the consumers' rights under the TCRA and which includes:

31

(1) the process for receiving a consumer report or consumer file;

(2) the process for requesting or removing a security alert or freeze;

(3) the toll-free telephone number for requesting a security alert;

(4) applicable fees;

(5) dispute procedures;

(6) the process for correcting a consumer file or report; and

(7) information on a consumer's right to bring an action in court or arbitrate a dispute, as required by Tex. Bus. & Com. Code § 20.03(d).

130.     The foregoing violations were willful.  Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and the other Texas Disclosures Subclass members.

131.     Defendants' willful conduct is reflected by, *inter alia*, the reasons listed above, as well as the following:

a.   The statutory text regarding the required disclosures is clear and free from ambiguity.  Tex. Bus. & Com. Code § 20.03(d).

b.   The rule created by Tex. Bus. & Com. Code § 20.03(d) is exceedingly simple and easy to follow.  However, Defendants simply failed to comply.

c.   Defendants' response to Myers is a form response letter, generated automatically, and included none of the information required under Texas law.

132.     Plaintiff and the Texas Disclosures Subclass members are entitled to statutory damages $1,000 for each and every one of these violations, pursuant to Tex. Bus. & Com. Code § 20.09.

133.    In the alternative, Defendants' violations were negligent, for all the reasons listed above, entitling Plaintiff and the Texas Disclosures Subclass to $500 for each and every one of these violations pursuant to Tex. Bus. & Com. Code § 20.09.

134.    Plaintiff and the Texas Disclosures Subclass members are further entitled to recover their costs and attorneys' fees, pursuant to Tex. Bus. & Com. Code § 20.09.

### PRAYER FOR RELIEF

135.    WHEREFORE, Myers, on behalf of herself and the Classes, prays for relief as follows:

A.    Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B.    Designating Myers as class representative and designating undersigned counsel as counsel for the Classes;

C.    Issuing proper notice to the Classes at Defendants' expense;

D.    Declaring that Defendants committed multiple, separate violations of the FCRA and TCRA;

E.    Declaring that Defendants acted willfully in deliberate or reckless disregard of Myers's rights and their obligations under the FCRA and TCRA;

F.    Awarding statutory damages and punitive damages as provided by the FCRA and TCRA;

G.    Awarding reasonable attorneys' fees and costs as provided by the FCRA and TCRA; and

H.    Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

### DEMAND FOR JURY TRIAL

136.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Classes demand a trial by jury.

33

Dated: May 26, 2015

NICHOLS KASTER, PLLP

/s/E. Michelle Drake
E. Michelle Drake (MN Bar No.0387366)*
Daniel C. Bryden (MN Bar No.0302284)**
John G. Albanese (MN Bar No.0395882)**
Megan D. Yelle (MN Bar No.0390870)**
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone:  612.256.3200
Fax:  612.338.4878
drake@nka.com
dbryden@nka.com
jalbanese@nka.com
myelle@nka.com

*generally admitted in W.D. Texas
**admitted *pro hac vice*

Ricardo G. Cedillo
State Bar No. 04043600
Mark W. Kiehne
State Bar No. 24032627
DAVIS, CEDILLO & MENDOZA, INC.
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas 78212
Tel.: (210) 822-6666
Fax: (210) 822-1151
rcedillo@lawdcm.com
mkiehne@lawdcm.com

ATTORNEYS FOR PLAINTIFF

Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**UNITED STATES OF AMERICA**            )
                                        )
              **Plaintiff,**            )
                                        )   **Civil Action No. 12-1313**
         **v.**                         )
                                        )
                                        )
**HIRERIGHT SOLUTIONS, INC.**           )
                                        )
              **Defendant.**            )
                                        )
_____)

## COMPLAINT FOR CIVIL PENALTIES,
## PERMANENT INJUNCTION, AND OTHER EQUITABLE RELIEF

Plaintiff, the United States of America, acting upon notification and authorization to the

Attorney General by the Federal Trade Commission ("FTC" or "Commission"), for its

Complaint, alleges:

1.      Plaintiff brings this action under sections 5(a), 13(b), and 16(a) of the Federal

Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 53(b), and 56(a); and section 621(a) of

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s(a), to obtain monetary civil

penalties, and injunctive or other relief from Defendant HireRight Solutions, Inc. for engaging in

violations of the FTC Act, 15 U.S.C. § 45(a), and the FCRA, 15 U.S.C. §§ 1681 – 1681x.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter under 28 U.S.C.

§§ 1331, 1337(a), 1345, and 1355, and under 15 U.S.C. §§ 45(a), 53(b), 56(a), and 1681s.

3.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) and 1395(a), and
15 U.S.C. § 53(b).

<u>PLAINTIFF</u>

4.      This action is brought by the United States of America on behalf of the Federal
Trade Commission.  The Commission is an independent agency of the United States government
given statutory authority and responsibility by, *inter alia*, the FTC Act, *as amended*, 15 U.S.C.
§§ 41-58, and the FCRA, 15 U.S.C. §§ 1681-1681x.  The Commission is charged, *inter alia*,
with enforcing section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair and
deceptive acts or practices in or affecting commerce; and the FCRA, which imposes duties upon
consumer reporting agencies.

<u>DEFENDANT</u>

5.      Defendant HireRight Solutions, Inc. ("HireRight Solutions" or "Defendant") is an
Oklahoma corporation with its principal place of business in Tulsa, Oklahoma.  Defendant
transacts or has transacted business in this district.

<u>THE FAIR CREDIT REPORTING ACT</u>

6.      The FCRA was enacted in 1970, became effective on April 25, 1971, and has
been in force since that date.  The Fair and Accurate Credit Transactions Act amended the FCRA
in December 2003.

7.      Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Commission to use
all of its functions and powers under the FTC Act to enforce compliance with the FCRA by all
persons subject thereto except to the extent that enforcement specifically is committed to some

other governmental agency, irrespective of whether the person is engaged in commerce or meets

any other jurisdictional tests set forth by the FTC Act.

8. HireRight Solutions, formerly known as USIS Commercial Services, Inc.

is now and has been a "consumer reporting agency," as defined in section 603(f) of the FCRA,

15 U.S.C. § 1681a(f). That section defines a consumer reporting agency as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis,
> regularly engages in whole or in part in the practice of assembling or evaluating
> consumer credit information or other information on consumers for the purpose of
> furnishing consumer reports to third parties, and which uses any means or facility
> of interstate commerce for the purpose of preparing or furnishing consumer
> reports.

HireRight Solutions regularly sells in interstate commerce information on consumers that it

assembles for the purpose of furnishing consumer reports to third parties, as described further

below.

9. The FCRA imposes several obligations on consumer reporting agencies,

including obligations to take reasonable steps to ensure the maximum possible accuracy of

consumer reports, to provide consumers with access to their reports, and to implement

procedures for consumers to dispute inaccurate information in their reports. These obligations

are described in more detail below.

<u>DEFENDANT'S BUSINESS PRACTICES</u>

10. HireRight Solutions provides background reports to thousands of

employers throughout the United States about prospective and current employees, in order to

assist the employers in making decisions about hiring and other employment-related issues

("background screening reports"). These reports contain public record information, including

criminal histories of individuals, from multiple sources.

11.     The background screening reports that HireRight Solutions provides to

employers are "consumer reports" as defined in section 603(d) of the FCRA, 15 U.S.C. §

1681a(d).  That section defines a "consumer report" as:

> any written, oral, or other communication of any information by a consumer
> reporting agency bearing on a consumer's credit worthiness, credit standing,
> credit capacity, character, general reputation, personal characteristics, or mode of
> living which is used or expected to be used or collected in whole or in part for the
> purpose of serving as a factor in establishing the consumer's eligibility for (A)
> credit or insurance to be used primarily for personal, family, or household
> purposes; (B) employment purposes; or (C) any other purpose authorized under
> section 604.

HireRight Solutions' reports are communicated to third parties; bear on, among other things,

consumers' general reputation and personal characteristics; and are used as a factor in

determining eligibility for employment.

## ACCURACY

12.     Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires all consumer

reporting agencies to follow reasonable procedures to assure maximum possible accuracy of

consumer report information.

13.     In numerous instances, Defendant failed to follow reasonable procedures to

assure maximum possible accuracy.  Among other things, Defendant:

(1)     failed to follow reasonable procedures to assure that the information

contained in consumer reports it furnished reflected the current public

record status of consumers' information, such as expungement of a

criminal record;

(2)     failed to follow reasonable procedures to prevent the inclusion of multiple

entries for the same criminal offense in the same report; and

(3)     failed to follow reasonable procedures to prevent the provision of

obviously erroneous consumer report information to employers, such as

purported information on a single consumer that included records of other

consumers with different names, dates of birth, or other identifiers that are

available in the public record.

14.     In multiple instances, these failures led to the reporting of inaccurate consumer

report information regarding prospective employees who were then denied employment or other

employment-related benefits.

## ACCESS AND CORRECTION

15.     Under the FCRA, consumer reporting agencies must allow consumers to access

their own information and dispute any inaccurate information.  In relevant part, the process is as

follows:  First, consumer reporting agencies must, upon request, clearly and accurately disclose

to a consumer who requests his or her file all information in that file at the time of the request.

15 U.S.C. § 1681g(a).  Second, within thirty days of receiving a notice that a consumer disputes

the completeness or accuracy of information in his or her file, the consumer reporting agency

must conduct a reasonable reinvestigation to determine whether the disputed information is

inaccurate and record the current status of the disputed information, or delete the information

from the file.  15 U.S.C. § 1681i(a)(1)(A).  Third, the consumer reporting agency must provide

written notice to the consumer of the results of the reinvestigation not later than five business

days after its completion.  15 U.S.C. § 1681i(a)(6).  Defendant did not comply with one or more

of these requirements.

16.    In numerous instances, Defendant either failed to provide consumers with information in their files or failed to do so upon request.  Their systems for fulfilling requests for reports resulted in either delays or the non-fulfillment of the requests.  For example, HireRight Solutions, Inc. experienced numerous backlogs for fulfilling consumers' requests because of inadequate staffing or technical problems.

17.    In numerous instances, Defendant did not conduct reinvestigations of disputed items in a consumer's file upon receipt of a notice of dispute from the consumer.  Defendant required consumers who wished to dispute information in consumer reports to have a copy of the report before Defendant would initiate a reinvestigation.  For consumers who did not have their consumer report, Defendant routinely instructed them to request a copy before Defendant would initiate a reinvestigation.  This practice often delayed the reinvestigation process and made it more difficult for consumers to initiate that process.

18.    In numerous instances, Defendant closed dispute reinvestigations without providing written notice of the results of the reinvestigations to affected consumers.

### SPECIAL OBLIGATIONS ON BACKGROUND SCREENERS WHO USE PUBLIC RECORD INFORMATION

19.    The FCRA contains special requirements for consumer reporting agencies that furnish consumer reports containing public record information for employment purposes, if that information is likely to have an adverse effect upon a consumer's ability to obtain employment.  These consumer reporting agencies must either (1) notify the consumer, at the time that such information is reported, of the fact that public record information is being reported, or (2) maintain "strict procedures" designed to ensure the reported public record information is complete and up to date.   15 U.S.C. § 1681k(a).

20.     In numerous instances, Defendant neither (1) notified consumers, at the time the information was reported, that they reported public record information to employers, nor (2) maintained "strict procedures" to ensure that the information in the reports was complete and up to date.  They had a complex, multi-step process for notifying consumers that public record information was being reported.  This process was not initiated until the day that the report was electronically transmitted to the employer and typically took more than one day to complete.  As a result, the notices were not mailed to consumers at the time the information was reported to employers.  Moreover, as described in Paragraph 13, Defendant did not maintain "strict procedures" to ensure that reported public record information was complete and up to date.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

### COUNT I

21.     As described in Paragraph 13, in multiple instances, Defendant failed to use reasonable procedures to assure maximum possible accuracy of consumer report information.

22.     By and through the acts and practices described in Paragraph 13, Defendant has violated section 607(b) of the FCRA, 15 U.S.C. § 1681e(b).

23.     Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 22 also constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT II

24.     As described in Paragraph 16, in multiple instances, Defendant failed to disclose to consumers, upon request, all information maintained in their consumer report files.

25.     By and through the acts and practices described in Paragraph 16, Defendant has

violated section 609(a)(1) of the FCRA, 15 U.S.C. § 1681g(a)(1).

26.     Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and

practices alleged in Paragraph 25 also constitute unfair or deceptive acts or practices in violation

of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

27.     As described in Paragraph 17, in multiple instances, Defendant failed to conduct

reinvestigations of the completeness or accuracy of information contained within a consumer's

file upon receipt of a notice of dispute from the consumer.

28.     By and through the acts and practices described in Paragraph 17, Defendant has

violated section 611(a)(1)(A) of the FCRA, 15 U.S.C. § 1681i(a)(1)(A).

29.     Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and

practices alleged in Paragraph 28 also constitute unfair or deceptive acts or practices in violation

of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT IV

30.     As described in Paragraph 18, in multiple instances, Defendant closed dispute

reinvestigations without providing written notice of the results of the reinvestigations to affected

consumers.

31.     By and through the acts and practices described in Paragraph 18, Defendant has

violated section 611(a)(6) of the FCRA, 15 U.S.C. § 1681i(a)(6).

32.     Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and

practices alleged in Paragraph 31 also constitute unfair or deceptive acts or practices in violation

of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT V

33.     As described in Paragraph 20, in multiple instances, Defendant failed to provide written notice to consumers of the fact that it reported public record information to employers, at the time the information was reported.  Defendant also failed to maintain strict procedures to ensure that the public record information in the reports was complete and up to date.

34.     By and through the acts and practices described in Paragraph 20, Defendant has violated section 613(a)(1)-(2) of the FCRA, 15 U.S.C. § 1681k(a)(1)-(2).

35.     Pursuant to section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 34 also constitute unfair or deceptive acts or practices in violation of section 5(a) of the FTC Act, 15  U.S.C. § 45(a).

## THIS COURT'S POWER TO GRANT RELIEF

36.     Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A), authorizes the Court to award monetary civil penalties in the event of a knowing violation of the FCRA, which constitutes a pattern or practice.  Defendant's violations of the FCRA, as alleged in this Complaint, have been knowing and have constituted a pattern or practice of violations.  As specified by the Federal Civil Penalty Inflation Adjustment Act of 1990, 28 U.S.C. § 2861, as amended by the Debt Collection Improvements Act of 1996, Pub. L. 104-134, § 31001(s)(1), 110 Stat. 1321-373, the Court is authorized to award a penalty of not more than $2,500 per violation for violations occurring before February 10, 2009, and $3,500 per violation for violations occurring on or after that date.

37.     Each instance in which Defendant has failed to comply with the FCRA constitutes a separate violation of the FCRA for the purpose of assessing monetary civil penalties under

section 621 of the FCRA, 15 U.S.C. § 1681s.  Plaintiff seeks monetary civil penalties for every

separate violation of the FCRA.

38.     Under section 621(a) of the FCRA, 15 U.S.C. § 1681(a), and section 13(b) of the

FTC Act, 15 U.S.C. § 53(b), this Court is authorized to issue a permanent injunction prohibiting

Defendant from violating the FTC Act and the FCRA.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff requests that this Court, pursuant to 15 U.S.C. §§ 45(a), 53(b),

1681s, and 1691c, and pursuant to the Court's own equitable powers:

(1)     Enter judgment against Defendant and in favor of Plaintiff for each law violation

alleged in this Complaint;

(2)     Enter an injunction against Defendant to prevent further violations of the FCRA

and the FTC Act, as alleged herein;

(3)     Award Plaintiff monetary civil penalties from Defendant for each violation of the

FCRA as alleged in this Complaint;

(4)     Order Defendant to pay the costs of this action; and

(5)     Award Plaintiff such additional relief as the Court may deem just and proper.

DATED:  August 8, 2012

**FOR THE UNITED STATES**
**OF AMERICA:**

STUART F. DELERY
Acting Assistant Attorney General
Civil Division
United States Department of Justice

MAAME EWUSI-MENSAH FRIMPONG
Deputy Assistant Attorney General
Civil Division

MICHAEL S. BLUME
Director
Consumer Protection Branch

 s/ Alan J. Phelps
ALAN J. PHELPS
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
PO Box 386
Washington, D.C. 20044
Phone: 202-307-6154
Facsimile: 202-514-8742
E-mail: alan.phelps@usdoj.gov
DC Bar No.: 475938

**FOR THE FEDERAL TRADE**
**COMMISSION:**

MANEESHA MITHAL
Associate Director
Division of Privacy and Identity Protection

ROBERT SCHOSHINSKI
Assistant Director
Division of Privacy and Identity Protection

ANTHONY RODRIGUEZ
Attorney
Division of Privacy and Identity Protection
Federal Trade Commission
601 New Jersey Ave. NW
Mail Stop NJ-8100
Washington, D.C.
Phone: 202-326-2757
Facsimile: 202-326-3062

TIFFANY GEORGE
Attorney
Division of Privacy and Identity Protection
Federal Trade Commission
601 New Jersey Ave. NW
Mail Stop NJ-8100
Washington, D.C.
Phone: 202-326-3040
Facsimile: 202-326-3062

Exhibit 2



PROTECTING AMERICA'S CONSUMERS

MAIN MENU                                    SEARCH

# Employment Background Screening Company to Pay $2.6 Million Penalty for Multiple Violations of the Fair Credit Reporting Act

## FTC Charges HireRight Solutions Incorrectly Listed Criminal Convictions on Reports of Some Consumers

FOR RELEASE

August 8, 2012

TAGS:  Finance  |  Finance  |  Bureau of Consumer Protection  |  Consumer Protection  |

Privacy and Security  |  Credit Reporting

An employment background screening company that provides consumer reports to companies nationwide will pay $2.6 million to settle Federal Trade Commission charges that it violated the Fair Credit Reporting Act by failing to use reasonable procedures to assure the maximum possible accuracy of information it provided, failing to give consumers copies of their reports, and failing to reinvestigate consumer disputes, as required by law.

The case against HireRight Solutions, Inc. represents the first time the FTC has charged an employment background screening firm with violating the FCRA, and is the second-largest civil penalty that the FTC has obtained under the Act. Only the 2006 $10 million civil penalty against consumer data broker ChoicePoint, Inc. was larger. The Department of Justice filed the complaint and proposed order against HireRight Solutions on the FTC's behalf. Under the settlement, the company also is barred from continuing its alleged illegal practices.

In its capacity as a consumer reporting agency, HireRight Solutions, provides background reports that contain information about prospective and current employees to help thousands of employers make decisions about hiring and other employment-related issues. Under the FCRA, the company's reports qualify as "consumer reports." They contain public-record information, including the individuals' criminal history.

The FTC alleges that in many cases, when it provided consumer reports to employers, HireRight Solutions failed to take reasonable steps to ensure that the information in the reports was current and reflected updates, such as the expungement of criminal records. Because of this, the FTC charged, employers sometimes received information that incorrectly listed criminal convictions on individuals' records.

In addition, according to the FTC's complaint, HireRight Solutions failed to follow reasonable procedures to prevent the same criminal offense information from being included in a consumer report multiple times, failed to follow reasonable procedures to prevent obviously inaccurate consumer report information from being provided to employers, and in numerous cases even included the records of the wrong person. The FTC alleged that these failures led to consumers being denied employment or other employment-related benefits.

Under the FCRA, consumer reporting agencies must allow consumers to access their own information and dispute any inaccuracies. To do this, the consumer reporting agency must clearly and adequately disclose information in their file to a consumer who requests it. Next, within 30 days of being notified that a consumer wants to dispute the information in his or her report, the consumer reporting agency must conduct a reasonable investigation to determine whether the information is inaccurate, record the status of the information, or delete it from the file. Finally, the consumer reporting agency must notify consumers in writing of the results of this reinvestigation of their file within five days of when it's completed.

In numerous instances, HireRight Solutions failed to comply with these FCRA requirements, the FTC alleges. This includes failing to conduct investigations of disputed items in a consumer's file after being notified of a dispute, requiring consumers who wanted to dispute information in their file to have a copy of the report before the company would start a reinvestigation, and telling consumers who did not have a copy of their report to request one before they would reinvestigate, delaying the dispute process and making it more difficult. In addition, according to the FTC, HireRight Solutions closed complaint investigations without providing written notice of the results to consumers, as required.

Finally, the complaint alleges that HireRight Solutions failed to provide consumers with written notification that it had reported public record information about them to employers when it was being reported, as the FCRA requires.

In addition to the $2.6 million civil penalty, the settlement prohibits HireRight Solutions from:

> failing to maintain reasonable procedures to ensure that its consumer report information is as accurate as possible;
>
> failing to provide consumers with information in their files in a timely manner;
>
> requiring consumers to obtain a copy of their report before the company will conduct a dispute reinvestigation;
>
> failing to provide consumers with the results of a dispute reinvestigation; and
>
> failing to comply with the requirements for consumer reporting agencies that use public record information.

## Consumer Education

The FTC has a variety of resources available for consumers seeking information about employment background checks. They included a business blog post, "Where HireRight Solutions Went Wrong," the consumer education publications, "What to Know When You Look for a Job" and "Employment Background Checks and Credit Reports," and a new video, "What to Know When Looking for a Job."

The Commission vote to authorize the staff to refer the complaint to the Department of Justice, and to approve the proposed consent decree, was 5-0. The DOJ filed the complaint and proposed consent decree on behalf of the Commission in U.S. District Court for the District of Columbia on August 8, 2012. The proposed consent decree is subject to court approval.

**NOTE:** The Commission authorizes the filing of a complaint when it has "reason to believe" that the law has been or is being violated, and it appears to the Commission that a proceeding is in the public interest. The complaint is not a finding or ruling that the defendant has actually violated the law. This consent judgment is for settlement purposes only and does not constitute an admission by the defendant of a law violation. Consent judgments have the force of law when signed by the District Court judge.

The Federal Trade Commission works for consumers to prevent fraudulent, deceptive, and unfair business practices and to provide information to help spot, stop, and avoid them. To file a complaint in English or Spanish, visit the FTC's online Complaint Assistant or call 1-877-FTC-HELP (1-877-382-4357). The FTC enters complaints into Consumer Sentinel, a secure, online database available to more than 2,000 civil and criminal law enforcement agencies in the U.S. and abroad. The FTC's website provides free information on a variety of consumer topics.  Like the FTC on Facebook, follow us on Twitter, and subscribe to press releases for the latest FTC news and resources.

(FTC File No. 102-3130)

## CONTACT INFORMATION

MEDIA CONTACT:
  Mitchell J. Katz
  *Office of Public Affairs*
  202-326-2161

STAFF CONTACT:
  Anthony Rodriguez
  *Bureau of Consumer Protection*
  202-326-3-2757

  Tiffany George
  *Bureau of Consumer Protection*
  202-326-3040



In English

En Español

## Related Cases

HireRight Solutions, Inc.

## For Consumers

Employment Background Checks and Credit Reports

Credit Reports & Scoring

What to Know When You Look for a Job

## For Businesses

Using Consumer Reports:  What Employers Need to Know

Disposing of Consumer Report Information? New Rule Tells How

Where HireRight Solutions Went Wrong

## Media Resources

Our Media Resources library provides one-stop collections of materials on numerous issues in which the FTC has been actively engaged. These pages are especially useful for members of the media.

Contact
Stay Connected
Privacy Policy
FTC en español

**ABOUT THE FTC**

What We Do

Our History

Commissioners

Bureaus & Offices

Biographies

Budgets

Performance

Office of Inspector General

FOIA

Careers at the FTC

**NEWS & EVENTS**

Press Releases

Media Resources

Events Calendar

Speeches

Audio/Video

Social Media

Blogs

**ENFORCEMENT**

Cases and Proceedings

Premerger Notification Program

Merger Review

Anticompetitive Practices

Rules

Statutes

Consumer Sentinel Network

**POLICY**

Advocacy

Advisory Opinions

Federal Register Notices

Reports

Testimony

Public Comments

International

**TIPS & ADVICE**

For Consumers

Business Center

Competition Guidance

**I WOULD LIKE TO...**

Submit a Consumer Complaint to the FTC

File a Comment

Get a Free Copy of My Credit Report

List a Number on the National Do Not Call Registry

Report An Antitrust Violation

**SITE INFORMATION**

Privacy Policy

Website Policy

No FEAR Act

USA.gov

Accessibility

Digital Government Strategy

Open Government

**FEDERAL TRADE COMMISSION**

Headquarters:

600 Pennsylvania Avenue, NW

Washington, DC 20580

Contact Us

Stay Connected with the FTC

Exhibit 3

**Access No: DA 7978**       **Order No: 9460748**

# NTN DecisionPoint Plus
INSTANT RESIDENT SELECTION SYSTEM

Screened For: DA 7978 - Ivanhoe Duplexes
26-Jun-2013

**Applicant Information**
Myers, Stephanie J          SSN ***-**-5669        Income $2,000            Rent    $500
Redacted                    DOB Redacted           Months at Residence  12
Temple, TX Red                                     Months at Employment 12

**Rental Recommendation** - Based on subscriber's employment, residency and applicant score acceptance criteria.

**Reject Applicant**        Rent to Income - Accept applicant
                            Score - Reject Applicant
                            See rejection letter for details

**Analysis Results**

| Rent to Income Multiple | Time at Residence | Time at Employment | Applicant Score |
|---|---|---|---|
| **Exceeds Requirement** | **Exceeds Requirement** | N/A | **52** |

Applicant Score based on analysis of tenant performance information, public records and credit report.

**Verification of Applicant Information**
Applicant has credit report:                              Confirmed
Applicant social security number matches credit report:   Confirmed
Applicant date of birth matches credit report:            Confirmed
Applicant current address matches credit report:          Not Confirmed
Applicant previous address matches credit report:         N/A
Report of Credit Fraud found:                             No

Acceptable (100-80) 80
Conditional (79-60) 70
60
Reject (59-00) 50
40

**Additional Addresses**     see NTN Tenant Performance Profile
  Redacted        Temple TX Red
        R   Austin TX Red
  Redacted        Round Rock TX Red

**Additional Names (aliases)**  see NTN Tenant Performance Profile

**Alert Messages**
Current Address - verify address with applicant

**Tenant Performance Information**  see NTN Tenant Performance Profile
No Tenant Performance/Lease Violations

**Public Records**  see NTN Tenant Performance Profile
**\* NO EXACT MATCH - See name match records on NTN Tenant Performance Profile**

**Custom Criteria Used in Calculating the Applicant Score**
Ignore negative educational loans if present
Ignore medical collections if present

End of NTN DecisionPoint

# NTN Tenant Performance Profile

Screened For: DA 7978  -  Ivanhoe Duplexes
26-Jun-2013

## Applicant Information

Myers, Stephanie J
Redacted
Temple TX R ted

SSN ***-**-5669
DOB Redacted

Names Screened: Myers, Step*

Databases for Search: Dallas/San Antonio/Austin; San Antonio/Austin/Dallas

## Additional Addresses

| Redacted | , Temple TX Red |
| Redacted | , Austin TX Red |
| Redacted | Round Rock TX RRed |

## Eviction Filing Data

All Civil Court Records are filed by NAME ONLY. This makes it impossible to be certain that the following filings involve your applicant. Please call the plaintiff listed for more information.

28-Dec-2006   Case Number: TARF00022822-JP04
Def: Myers, Stephen L
Pla: Chase Home Finance LLC 972-386-5040

5852 Arena Circle Fort Worth TX 76179
County: Tarrant

18-May-2010   Case Number: TAR-JP04-10-E0003116
Def: Myers, Stephen
Pla: Irene Lopez

05/27/2010-dflt Judg+
901 Reveille Fort Worth TX 76108
County: Tarrant

## Tenant Performance/Lease Violations

No Tenant Performance/Lease Violations Found

## Use of Applicant's SSN in Previous Screening

No Previous Use Found

## Landlord Identification

NTN suggests that this is the actual Property Owner for the address screened. NTN recommends that you contact them for a complete rental history on your applicant.

| Address Screened | Database Used | |
|---|---|---|
| Redacted  [765] | San Antonio/Austin/Dallas | No Landlord ID Found |
| Redacted  [787] | San Antonio/Austin/Dallas | |
| Landlord: Ventana Oaks | | Redacted          Austin, Red |
| Phone: 512-310-0108 | | Date Verified:25-Jan-2011 |
| Landlord: Ventana Oaks Apartments | | R  Austin, Red |
| Phone: 512-310-0108 | | Date Verified:11-Oct-2010 |
| Landlord: Ventana Oaks Apts | | R  Austin, Red |
| Phone: 888-895-8974 | | Date Verified:15-Jul-2005 |
| Landlord: Spraddle Creek Apartments | | R  Austin, Red |
| Phone: 512-310-0108 | | Date Verified:08-Apr-2005 |
| Landlord: The Ranch Apts | | Redacted          Austin, Red |
| Phone: 512-828-0555 | | Date Verified:10-May-2004 |
| Redacte  [786] | San Antonio/Austin/Dallas | No Landlord ID Found |

# Experian Credit Report

701 Experian Parkway, PO Box 2002, Allen, TX, 75013, 888-397-3742

Screened For: DA 7978 - Ivanhoe Duplexes
Report Date: 26-Jun-2013

## Screened Information

Myers, Stephanie J
Redacted
Temple TX Red

SSN ***-**-5669
DOB Redacted

## Personal Information

STEPHANIE J MYERS
Redacted
Redacted , AUSTIN TX Red
Redacted , ROUND ROCK TX Red
, TEMPLE TX RedR

DOB: Redacted
21-Sep-2011 to 13-Aug-2012
27-May-2009
28-Jun-2008 to 16-Aug-2008

### Summary

| | | | | | |
|---|---|---|---|---|---|
| Total Trades: | 3 | Historically 30: | 0 | Account Balance: | $6,336 |
| Current Trades: | 2 | Historically 60: | 0 | Monthly Payment: | $248 |
| Unrated Trades: | 0 | Historically 90+: | 0 | Amt Past Due: | $0 |
| Trades Now Past Due: | 0 | Inquiries: | 1 | Tradelines in Col: | $0 |
| Trades Now Negative: | 1 | Inq Last 6 Mos: | 0 | Collection Balance: | $220 |
| Hist Negative Trades: | 0 | Public Recs: | 0 | Total Collections: | $110 |
| High Credit | $230-8,018 | Collections: | 2 | Real Estate Balance: | $0 |

### Trade Lines

| Firm Name/ID<br>Account Number<br>Account Type<br>Status | Opened<br>Reported<br>Last Act | CredLim<br>HighCred<br>Bus Kind | Balance<br>PastDue<br>Owner | MoPmnt<br>MoRep<br>Terms | Pay Pattern | 30 | 60 | 90 |
|---|---|---|---|---|---|---|---|---|
| ALLY FINANCIAL, Redac<br>Redacted<br>Installment<br>Open<br>1-AsAgreed<br>AUTOMOBILE | 10-Feb-2012<br>03-Jun-2013<br>22-Apr-2013 | N/A<br>$8,018<br>FA | $6,048<br>N/A<br>JointContract | $209<br>17 | CCCCCCCCCCCC<br>CCCCC | 0 | 0 | 0 |
| KOHLS/CAPONE RReda<br><br>Revolving<br>Open<br>1-AsAgreed<br>CREDIT LIMIT: 300 | 11-Jul-2012<br>14-Jun-2013<br>06-Jun-2013 | $300<br>$230<br>DC | $178<br>N/A<br>Individual | $39<br>11 | CCCCCCCCCCC | 0 | 0 | 0 |

### Trade Lines in Collection

| Firm Name/ID<br>Account Number<br>Account Type<br>Status | Opened<br>Reported<br>Last Act | CredLim<br>HighCred<br>Bus Kind | Balance<br>PastDue<br>Owner | MoPmnt<br>MoRep<br>Terms | Pay Pattern | 30 | 60 | 90 |
|---|---|---|---|---|---|---|---|---|
| RJM ACQ LLC/Reda<br>Redacte<br>Installment<br>Closed<br>9-Collection | 27-Jan-2010<br>03-Apr-2011<br>---------- | N/A<br>$272<br>YZ | $0<br>N/A<br>Individual | N/A | B99999999999 | 0 | 0 | 0 |

PAID ACCOUNT/WAS A COLLECTION ACCOUNT, INSURANCE CLAIM OR GOVERNMENT CLAIM OR WAS TERMINATED FOR DEFAULT.
ORIGINAL CREDITOR: COMPASS BANK CHECKING ACCOUNT-
RECENT DELINQUENCY DATE(S): 03/11 ; 02/11

### Collections

| Creditor<br>Industry Code<br>Status<br>Narratives | Date Reported<br>Orig Amt Date<br>Date Assigned | Member Number<br>Account Number | Balance<br>Orig Amt |
|---|---|---|---|
| CREDIT MANAGEMENT LP<br><br>Closed | 16-Sep-2011<br>05-Jul-2011<br>05-Jul-2011 | Reda<br>Redact | $110<br>N/A<br>---------- |

COLLECTION AGENCY ATTORNEY
ACCOUNT SERIOUSLY PAST DUE DATE/ACCOUNT ASSIGNED TO ATTORNEY, COLLECTION AGENCY, OR CREDIT GRANTORS
INTERNAL COLLECTION DEPARTMENT.
ORIGINAL CREDITOR: X-TREME TAN LLC
RECENT DELINQUENCY DATE(S): 09/11

| COUNTRY PLACE APARTMEN | 08-Oct-2008 | Reda | N/A |
|---|---|---|---|
| | 03-Jul-2008 | cted | N/A |
| Closed | 03-Jul-2008 | | ----------- |

LEASE
ACCOUNT SERIOUSLY PAST DUE DATE/ACCOUNT ASSIGNED TO ATTORNEY, COLLECTION AGENCY, OR CREDIT GRANTORS
INTERNAL COLLECTION DEPARTMENT.
ORIGINAL CREDITOR: COUNTRY PLACE APARTMENTS
RECENT DELINQUENCY DATE(S): 10/08

## Inquires

| Date | Subscriber Name | Subscriber # |
|---|---|---|
| 04-Feb-2012 | CREDCO | 3903978 |

## Alert Messages
0084 SSN MATCHES

## SCORING

626
(38) SERIOUS DELINQUENCY AND PUBLIC RECORD OR COLLECTION FILED.
(14) LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED.
(18) NUMBER OF ACCOUNTS DELINQUENT.
(10) PROPORTION OF BALANCE TO HIGH CREDIT ON BANK REVOLVING OR ALL REVOLVING ACCOUNTS.

**Access No: DA 7978**　　　　**Order No: 9460749**

# **S**tatewide(instant) **C**riminal **S**earch

Screened For: DA 7978 - Ivanhoe Duplexes
26-Jun-2013

**Applicant Information**
Myers, Stephanie J　　　　　　　　　　SSN  XXX-XX-5669
Redacted　　　　　　　　　　　　　　DOB Redacted
TEMPLE, TX RRe

Jurisdiction: Texas

| | |
|---|---|
| Name on File | STEPHANIE JO MYERS |
| Date of Birth | Redacted |
| Gender | Female |
| Race | White |
| Eye Color | Green |
| Hair Color | Brown |
| Height | 5' 07" |
| Weight | 142 lbs |
| Source Of Record | Texas Department of Public Safety |
| Match Type | Exact Name And DOB Match |

**Offense:** DRIVING WHILE INTOXICATED 2ND

| Case Number | Cause Number | Offense Level | File Date |
|---|---|---|---|
| 9203271937 | 11-01004-3 | MA | |
| Offense Date | Arrest Date | Charge Date | |
| Not Reported | 01/29/2011 | | |
| Disposition | Disposition Date | Fine | Court Fee |
| CONVICTED | 05/16/2011 | $4,000.00 | $417.00 |
| Offense County | Plea | Plea Date | Statute |
| | Guilty | | |

Offense Details
| | |
|---|---|
| Agency | TX2460500 |
| Citation | 49.09 (A) |
| Individual ID | Redac |
| NCIC Code | 2600 |
| Offense Code | 54040010 |
| Prosecuting Agency | WILLIAMSON COUNTY (FLORENCE, TEXAS) |
| Tracking Number | 9203271937 |
| Transaction Number | 19499629 |
| TRS TRN Code | A001 |

Arrest Details
| | |
|---|---|
| Arresting Agency | WILLIAMSON COUNTY (ROUND ROCK, TEXAS) |

Court Details
| | |
|---|---|
| Court Name | WILLIAMSON COUNTY COURT AT LAW 3 |
| Probation Sentence | 15 months |
| Sentence Date | 05/16/2011 |

**Offense:** DRIVING WHILE INTOXICATED

| Case Number | Cause Number | Offense Level | File Date |
|---|---|---|---|
| 9086875351 | 0605433 | MB | |
| Offense Date | Arrest Date | Charge Date | |
| 12/21/2005 | 12/21/2005 | | |
| Disposition | Disposition Date | Fine | Court Fee |
| CONVICTED | 06/05/2006 | $2,000.00 | $364.00 |
| Offense County | Plea | Plea Date | Statute |

Guilty

Offense Details
| | |
|---|---|
| Agency | TX2460500 |
| Citation | 49.04 |
| Individual ID | Redact |
| NCIC Code | 2599 |
| Offense Code | 54040009 |
| Prosecuting Agency | WILLIAMSON COUNTY (FLORENCE, TEXAS) |
| Tracking Number | 9086875351 |
| Transaction Number | 15076171 |
| TRS TRN Code | A001 |

Arrest Details
| | |
|---|---|
| Arresting Agency | WILLIAMSON COUNTY (ROUND ROCK, TEXAS) |

Court Details
| | |
|---|---|
| Court Name | WILLIAMSON COUNTY COURT AT LAW 3 |
| Probation Sentence | 15 months |
| Sentence Date | 06/05/2006 |

---

| | |
|---|---|
| Name on File | STEPHANIE JO MYERS |
| Date of Birth | Redacted |
| Gender | Female |
| Race | CAUCASIAN / WHITE |
| Height | 5 FEET 07 INCHES |
| Weight | 125 LBS |
| Address | Redacted          ROUND ROCK, TX Rea |
| Source Of Record | Travis TX, Misdemeanors |
| Match Type | Exact Name And DOB Match |

**Offense:** ASSAULT CAUSES BODILY INJURY FAMILY VIOLENCE

| Case Number | Cause Number | Offense Level | File Date |
|---|---|---|---|
| C-1-CR-05-709604 | | | 10/20/2005 |
| Offense Date | Arrest Date | Charge Date | |
| 08/29/2005 | | | |
| Disposition | Disposition Date | Fine | Court Fee |
| DISMISSED | 07/31/2006 | $0.00 | $0.00 |
| Offense County | Plea | Plea Date | Statute |
| Travis | | | |

---

| | |
|---|---|
| Name on File | Stephanie Jo Myers |
| Date of Birth | Redacted |
| Gender | Female |
| Race | White |
| Eye Color | Green |
| Hair Color | Brown |
| Height | 67 |
| Weight | 142 lbs |
| Source Of Record | Williamson, Texas |
| Match Type | Exact Name And DOB Match |

**Offense:** ASSAULT W/ BODILY INJURY

| Case Number | Cause Number | Offense Level | File Date |
|---|---|---|---|
| | | MA | 02/11/2004 |
| Offense Date | Arrest Date | Charge Date | |
| 05/20/2003 | 09/04/2003 | | |
| Disposition | Disposition Date | Fine | Court Fee |
| Dismissed - Other | 02/10/2005 | $0.00 | $0.00 |
| Offense County | Plea | Plea Date | Statute |
| Williamson | | | |

Offense Details
  Arresting Agency     Williamson County Sheriff's Office
Court Details
  Court Name     3

| | |
|---|---|
| Name on File | Stephanie Jo Myers |
| Date of Birth | Redacted |
| Gender | Female |
| Race | White |
| Eye Color | Green |
| Hair Color | Brown |
| Height | 67 |
| Weight | 142 lbs |
| Source Of Record | Williamson, Texas |
| Match Type | Exact Name And DOB Match |

**Offense:** DRIVING WHILE INTOXICATED

| Case Number | Cause Number | Offense Level | File Date |
|---|---|---|---|
| | | MB | 01/24/2006 |
| Offense Date | Arrest Date | Charge Date | |
| 12/21/2005 | 12/21/2005 | | |
| Disposition | Disposition Date | Fine | Court Fee |
| Final Conviction - Fine Only | 06/05/2006 | $0.00 | $0.00 |
| Offense County | Plea | Plea Date | Statute |
| Williamson | | | |

Offense Details
  Arresting Agency     Round Rock Police Dept
Court Details
  Court Name     3

**Offense:** DRIVING WHILE INTOXICATED

| Case Number | Cause Number | Offense Level | File Date |
|---|---|---|---|
| | | MB | 10/15/2007 |
| Offense Date | Arrest Date | Charge Date | |
| 12/21/2005 | | | |
| Disposition | Disposition Date | Fine | Court Fee |
| Motion to Revoke Denied | 02/19/2008 | $0.00 | $0.00 |
| Offense County | Plea | Plea Date | Statute |
| Williamson | | | |

Court Details
  Court Name     3

| | |
|---|---|
| Name on File | Stephanie Jo Myers |
| Date of Birth | Redacted |
| Gender | Female |
| Race | White |
| Eye Color | Green |
| Hair Color | Brown |
| Height | 67 |
| Weight | 142 lbs |
| Source Of Record | Williamson, Texas |
| Match Type | Exact Name And DOB Match |

**Offense:** DRIVING WHILE INTOXICATED 2ND

| Case Number | Cause Number | Offense Level | File Date |
|---|---|---|---|
| | | MA | 02/15/2011 |
| Offense Date | Arrest Date | Charge Date | |
| 01/29/2011 | 01/29/2011 | | |
| Disposition | Disposition Date | Fine | Court Fee |

| Final Conviction - Formal Probation | | 05/16/2011 | $0.00 | $0.00 |
|---|---|---|---|---|
| Offense County | | Plea | Plea Date | Statute |
| Williamson | | | | |
| Offense Details | | | | |
| Arresting Agency | Round Rock Police Dept | | | |
| Court Details | | | | |
| Court Name | 3 | | | |

**Offense:** DRIVING WHILE INTOXICATED 2ND

| Case Number | | Cause Number | Offense Level | File Date |
|---|---|---|---|---|
| | | | MA | 02/15/2011 |
| Offense Date | | Arrest Date | Charge Date | |
| 01/29/2011 | | 01/29/2011 | | |
| Disposition | | Disposition Date | Fine | Court Fee |
| | | | $0.00 | $0.00 |
| Offense County | | Plea | Plea Date | Statute |
| Williamson | | | | |
| Offense Details | | | | |
| Arresting Agency | Round Rock Police Dept | | | |
| Court Details | | | | |
| Court Name | 3 | | | |

**Access No: DA 7978**     **Order No: 9460750**

# OFAC Search

Screened For: DA 7978  -  Ivanhoe Duplexes
26-Jun-2013

**Applicant Information**
Myers, Stephanie J
Redacted
TEMPLE, TX R !e

SSN  XXX-XX-5669
DOB  Redacted

NO RECORDS FOUND ON THIS SUBJECT

Criminal Report Disclaimer

This criminal background check is based upon limited identification information, i.e. name and/or birth date, etc. Because of this, absolute certainty that this check applies to the individual being screened is not possible. Caution is urged even when this check produces an accurate match. The data relied on for this criminal search was obtained from State Agencies and are updated through the Dru Sojdin data feed. Terrorist search results are obtained from the Federal Office of Foreign Asset Control and various State Agencies. These Agencies AND NTN URGE YOU to independently VERIFY all criminal background information prior to using the data. To verify terrorist matches contact the Federal Office of Foreign Asset Control at 202-622-2490. Additional information and verification can be obtained from the local law enforcement agency where the offender resides. No responsibility is accepted by NTN for errors in State records.

VERIFY ALL DATA

26-Jun-2013

Stephanie J Myers
Redacted
Temple TX Reda

Dear APPLICANT:

Thank you for your recent application. The details on your application were carefully verified. Our uniform credit criteria was applied to the results of our investigation. Also evaluated was whether or not your income was sufficient, in light of your other debt, to meet the additional rental obligation. Based on information we have in our file, we have DENIED your application for the following reason(s):

Credit Report
Applicant does not meet subscribers acceptance criteria

The agency below provided us with information that may have influenced our decision.

Experian P.O. Box 2002 Allen, TX, 75013, 888-397-3742

However, the Agency did not make the decision and is unable to explain to you why the decision was made. According to the Fair Credit Reporting Act, you have the right to know what information was reported to us. You have the right to obtain a free copy of your credit report from the Agency above within sixty days. You have the right to dispute, directly with the Agency identified, the accuracy or completeness of the information contained in your file. The Agency must, within a reasonable period, reinvestigate. It must then remove or modify inaccurate information. The Agency may not charge a fee for the reinvestigation. If the reinvestigation does not resolve the dispute to your satisfaction you may send a statement to the Agency to be kept in your file explaining why you think the record is inaccurate. The Agency must include the statement, or a clear summary of your statement, in future reports.

We also obtained your credit score from this credit reporting agency and used it in making our credit decision. Your credit score is a number that reflects the information in your consumer report. Your credit score can change, depending on how the information in your consumer report changes.

Your credit Score: 626
Date: 26-Jun-2013
Score ranges from a low of 300 to a high of 850

Key factors that adversely affected your credit score:
(38) serious delinquency and public record or collection filed.
(14) length of time accounts have been established.
(18) number of accounts delinquent.
(10) proportion of balance to high credit on bank revolving or all revolving accounts.

If you have any questions regarding your credit score, you should contact:

Experian P.O. Box 2002 Allen, TX, 75013, 888-397-3742

We obtained this information through:
NTN - Dallas - PO Box 3058 Canyon Lake, TX 78113 Tel. 800.801.1371

If we have based our decision on reasons provided to us by a person other than the Agency listed above, you have the right to obtain a disclosure of the nature of the information provided to us by making a written request within sixty days.

Thank you for your interest in renting with us.

Yours Truly,

Exhibit 4



**NATIONAL TENANT NETWORK**

National Tenant Network
P.O. Box 3058
Canyon Lake, TX 78133

November 25, 2013

Stephanie J Myers
Redacted
Temple, TX Redac

RE: Consumer Disclosure Request

Stephanie,

We have received your request for a copy of your consumer profile that was provided to AIM Properties on June 26, 2013. I have enclosed the entire report with this letter. Also, per your phone request on November 25, 2013, I pulled a current eviction and criminal report on you, but there were no new entries.

For more current consumer credit profile information, simply go to www.annualcreditreport.com and pull a report from all three credit bureaus. You may do this for free, once every 12 months.

If you would like to discuss this with me, reply by e-mail to stacy@ntnonline.com or call me at 1-800-801-1371 x5. I stand ready to assist you in any way possible.

Sincerely,

Stacy Howell
Executive Accounts Manager

**Access No: DA 7978**          **Order No: 9460748**

# NTN DecisionPoint Plus

INSTANT RESIDENT SELECTION SYSTEM

Screened For: DA 7978 - Ivanhoe Duplexes
26-Jun-2013

**Applicant Information**
Myers, Stephanie J                    SSN ***-**-5669        Income $2,000            Rent    $500
Redacted                              DOB Redacted           Months at Residence  12
Temple, TX Redac                                             Months at Employment 12

**Rental Recommendation** - Based on subscriber's employment, residency and applicant score acceptance criteria.

**Reject Applicant**          Rent to Income - Accept applicant
                              Score - Reject Applicant
                              See rejection letter for details

**Analysis Results**

| Rent to Income Multiple Exceeds Requirement | Time at Residence Exceeds Requirement | Time at Employment N/A | Applicant Score 52 |
|---|---|---|---|

Applicant Score based on analysis of tenant performance information, public records and credit report.

**Verification of Applicant Information**
Applicant has credit report:                              **Confirmed**
Applicant social security number matches credit report:   **Confirmed**
Applicant date of birth matches credit report:           **Confirmed**
Applicant current address matches credit report:         **Not Confirmed**
Applicant previous address matches credit report:        **N/A**
Report of Credit Fraud found:                            **No**

| | |
|---|---|
| Acceptable (100-80) | 90 |
| | 80 |
| Conditional (79-60) | 70 |
| | 60 |
| Reject (59-00) | 50 |
| | 40 |

**Additional Addresses**     see NTN Tenant Performance Profile
Redacted        Temple TX Redac
Redacted    Austin TX Redac
Redacted        Round Rock TX Redac

**Additional Names (aliases)**  see NTN Tenant Performance Profile

**Alert Messages**
Current Address - verify address with applicant

**Tenant Performance Information**  see NTN Tenant Performance Profile
No Tenant Performance/Lease Violations

**Public Records**  see NTN Tenant Performance Profile
**\* NO EXACT MATCH - See name match records on NTN Tenant Performance Profile**

**Custom Criteria Used in Calculating the Applicant Score**
Ignore negative educational loans if present
Ignore medical collections if present

End of NTN DecisionPoint

# **NTN** **T**enant **P**erformance **P**rofile

Screened For: DA 7978 - Ivanhoe Duplexes
26-Jun-2013

## **Applicant Information**

Myers, Stephanie J
Redacted
Temple TX Red

SSN \*\*\*-\*\*-5669
DOB Redacted

## **Additional Addresses**

Redacted       , Temple TX Red
Redacted    , Austin TX Red
Redacted          Round Rock TX Red

Names Screened: Myers, Step*

Databases for Search: Dallas/San Antonio/Austin; San Antonio/Austin/Dallas

## **Eviction Filing Data**
All Civil Court Records are filed by NAME ONLY. This makes it impossible to be certain that the following filings involve your applicant. Please call the plaintiff listed for more information.

28-Dec-2006    Case Number: TARF00022822-JP04
Def: Myers, Stephen L
Pla: Chase Home Finance LLC  972-386-5040

5852 Arena Circle Fort Worth TX 76179
County: Tarrant

18-May-2010    Case Number: TAR-JP04-10-E0003116
Def: Myers, Stephen
Pla: Irene Lopez

05/27/2010-dflt Judg+
901 Reveille Fort Worth TX 76108
County: Tarrant

## **Tenant Performance/Lease Violations**
No Tenant Performance/Lease Violations Found

## **Use of Applicant's SSN in Previous Screening**
No Previous Use Found

## **Landlord Identification**
NTN suggests that this is the actual Property Owner for the address screened. NTN recommends that you contact them for a complete rental history on your applicant.

| Address Screened | Database Used | |
|---|---|---|
| Redacted [765] | San Antonio/Austin/Dallas | No Landlord ID Found |
| Redacted [787] Landlord: Ventana Oaks Phone: 512-310-0108 | San Antonio/Austin/Dallas | Redacted          Austin, RRed Date Verified:25-Jan-2011 |
| Landlord: Ventana Oaks Apartments Phone: 512-310-0108 | | Redacted          Austin, Red Date Verified:11-Oct-2010 |
| Landlord: Ventana Oaks Apts Phone: 888-895-8974 | | Redacted          Austin, Red Date Verified:15-Jul-2005 |
| Landlord: Spraddle Creek Apartments Phone: 512-310-0108 | | Redacted          Austin, Red Date Verified:08-Apr-2005 |
| Landlord: The Ranch Apts Phone: 512-828-0555 | | Redacted          Austin, Red Date Verified:10-May-2004 |
| Redacte [786] | San Antonio/Austin/Dallas | No Landlord ID Found |

# Experian Credit Report

701 Experian Parkway, PO Box 2002, Allen, TX, 75013, 888-397-3742

Screened For: DA 7978 - Ivanhoe Duplexes
Report Date: 26-Jun-2013

## Screened Information

Myers, Stephanie J      SSN ***-**-5669
Redacted             DOB Redacted
Temple TX Red

## Personal Information

STEPHANIE J MYERS                                              DOB: Redacted
Redacted       , TEMPLE TX Red                            21-Sep-2011 to 13-Aug-2012
Redacted       , AUSTIN TX Red                            27-May-2009
Redacted       , ROUND ROCK TX Red                 28-Jun-2008 to 16-Aug-2008

### Summary

| | | | | | | |
|---|---|---|---|---|---|---|
| Total Trades: | 3 | Historically 30: | 0 | Account Balance: | $6,336 | |
| Current Trades: | 2 | Historically 60: | 0 | Monthly Payment: | $248 | |
| Unrated Trades: | 0 | Historically 90+: | 0 | Amt Past Due: | $0 | |
| Trades Now Past Due: | 0 | Inquiries: | 1 | Tradelines in Col: | $0 | |
| Trades Now Negative: | 1 | Inq Last 6 Mos: | 0 | Collection Balance: | $220 | |
| Hist Negative Trades: | 0 | Public Recs: | 0 | Total Collections: | $110 | |
| High Credit | $230-8,018 | Collections: | 2 | Real Estate Balance: | $0 | |

### Trade Lines

| Firm Name/ID<br>Account Number<br>Account Type<br>Status | Opened<br>Reported<br>Last Act | CredLim<br>HighCred<br>Bus Kind | Balance<br>PastDue<br>Owner | MoPmnt<br>MoRep<br>Terms | Pay Pattern | 30 | 60 | 90 |
|---|---|---|---|---|---|---|---|---|
| ALLY FINANCIAL Reda<br>Redacted<br>Installment<br>Open<br>1-AsAgreed<br>AUTOMOBILE | 10-Feb-2012<br>03-Jun-2013<br>22-Apr-2013 | N/A<br>$8,018<br>FA | $6,048<br>N/A<br>JointContract | $209<br>17 | CCCCCCCCCCCC<br>CCCCC | 0 | 0 | 0 |
| KOHLS/CAPONE, Redac<br><br>Revolving<br>Open<br>1-AsAgreed<br>CREDIT LIMIT: 300 | 11-Jul-2012<br>14-Jun-2013<br>06-Jun-2013 | $300<br>$230<br>DC | $178<br>N/A<br>Individual | $39<br>11 | CCCCCCCCCCC | 0 | 0 | 0 |

### Trade Lines in Collection

| Firm Name/ID<br>Account Number<br>Account Type<br>Status | Opened<br>Reported<br>Last Act | CredLim<br>HighCred<br>Bus Kind | Balance<br>PastDue<br>Owner | MoPmnt<br>MoRep<br>Terms | Pay Pattern | 30 | 60 | 90 |
|---|---|---|---|---|---|---|---|---|
| RJM ACQ LLC Reda<br>Redact<br>Installment<br>Closed<br>9-Collection | 27-Jan-2010<br>03-Apr-2011<br>------------ | N/A<br>$272<br>YZ | $0<br>N/A<br>Individual | N/A | B99999999999 | 0 | 0 | 0 |

PAID ACCOUNT/WAS A COLLECTION ACCOUNT, INSURANCE CLAIM OR GOVERNMENT CLAIM OR WAS TERMINATED FOR DEFAULT.
ORIGINAL CREDITOR: COMPASS BANK CHECKING ACCOUNT-
RECENT DELINQUENCY DATE(S): 03/11 ; 02/11

### Collections

| Creditor<br>Industry Code<br>Status<br>Narratives | Date Reported<br>Orig Amt Date<br>Date Assigned | Member Number<br>Account Number | Balance<br>Orig Amt |
|---|---|---|---|
| | | Redacted | |
| CREDIT MANAGEMENT LP<br><br>Closed<br>COLLECTION AGENCY ATTORNEY | 16-Sep-2011<br>05-Jul-2011<br>05-Jul-2011 | | $110<br>N/A<br>------------ |

ACCOUNT SERIOUSLY PAST DUE DATE/ACCOUNT ASSIGNED TO ATTORNEY, COLLECTION AGENCY, OR CREDIT GRANTORS INTERNAL
COLLECTION DEPARTMENT.
ORIGINAL CREDITOR: X-TREME TAN LLC
RECENT DELINQUENCY DATE(S): 09/11

| COUNTRY PLACE APARTMEN | 08-Oct-2008 | Redacted | N/A |
| | 03-Jul-2008 | | N/A |
| Closed | 03-Jul-2008 | | ----------- |

LEASE
ACCOUNT SERIOUSLY PAST DUE DATE/ACCOUNT ASSIGNED TO ATTORNEY, COLLECTION AGENCY, OR CREDIT GRANTORS INTERNAL
COLLECTION DEPARTMENT.
ORIGINAL CREDITOR: COUNTRY PLACE APARTMENTS
RECENT DELINQUENCY DATE(S): 10/08

## Inquires

| Date | Subscriber Name | Subscriber # |
| 04-Feb-2012 | CREDCO | 3903978 |

## Alert Messages
0084 SSN MATCHES

## SCORING

626
(38) SERIOUS DELINQUENCY AND PUBLIC RECORD OR COLLECTION FILED.
(14) LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED.
(18) NUMBER OF ACCOUNTS DELINQUENT.
(10) PROPORTION OF BALANCE TO HIGH CREDIT ON BANK REVOLVING OR ALL REVOLVING ACCOUNTS.

26-Jun-2013

Stephanie J Myers
Redacted
Temple TX Reda

Dear APPLICANT:

Thank you for your recent application. The details on your application were carefully verified. Our uniform credit criteria was applied to the results of our investigation. Also evaluated was whether or not your income was sufficient, in light of your other debt, to meet the additional rental obligation. Based on information we have in our file, we have DENIED your application for the following reason(s):

Credit Report
Applicant does not meet subscribers acceptance criteria

The agency below provided us with information that may have influenced our decision.

Experian P.O. Box 2002 Allen, TX, 75013, 888-397-3742

However, the Agency did not make the decision and is unable to explain to you why the decision was made. According to the Fair Credit Reporting Act, you have the right to know what information was reported to us. You have the right to obtain a free copy of your credit report from the Agency above within sixty days. You have the right to dispute, directly with the Agency identified, the accuracy or completeness of the information contained in your file. The Agency must, within a reasonable period, reinvestigate. It must then remove or modify inaccurate information. The Agency may not charge a fee for the reinvestigation. If the reinvestigation does not resolve the dispute to your satisfaction you may send a statement to the Agency to be kept in your file explaining why you think the record is inaccurate. The Agency must include the statement, or a clear summary of your statement, in future reports.

We also obtained your credit score from this credit reporting agency and used it in making our credit decision. Your credit score is a number that reflects the information in your consumer report. Your credit score can change, depending on how the information in your consumer report changes.

Your credit Score: 626
Date: 26-Jun-2013
Score ranges from a low of 300 to a high of 850

Key factors that adversely affected your credit score:
(38) serious delinquency and public record or collection filed.
(14) length of time accounts have been established.
(18) number of accounts delinquent.
(10) proportion of balance to high credit on bank revolving or all revolving accounts.

If you have any questions regarding your credit score, you should contact:
Experian P.O. Box 2002 Allen, TX, 75013, 888-397-3742

We obtained this information through:
NTN - Dallas - PO Box 3058 Canyon Lake, TX 78113 Tel. 800.801.1371

If we have based our decision on reasons provided to us by a person other than the Agency listed above,

you have the right to obtain a disclosure of the nature of the information provided to us by making a written request within sixty days.

Thank you for your interest in renting with us.

Yours Truly,

**Access No: DA 7978**        **Order No: 9460749**

# Statewide(instant) Criminal Search

Screened For: DA 7978 - Ivanhoe Duplexes
26-Jun-2013

## Applicant Information

Myers, Stephanie J                    SSN  XXX-XX-5669
Redacted                              DOB  Redacted
TEMPLE, TX Red

**Jurisdiction: Texas**

| | |
|---|---|
| Name on File | STEPHANIE JO MYERS |
| Date of Birth | Redacted |
| Gender | Female |
| Race | White |
| Eye Color | Green |
| Hair Color | Brown |
| Height | 5' 07" |
| Weight | 142 lbs |
| Source Of Record | Texas Department of Public Safety |
| Match Type | Exact Name And DOB Match |

**Offense:** DRIVING WHILE INTOXICATED 2ND

| Case Number | Cause Number | Offense Level | File Date |
|---|---|---|---|
| 9203271937 | 11-01004-3 | MA | |
| Offense Date | Arrest Date | Charge Date | |
| Not Reported | 01/29/2011 | | |
| Disposition | Disposition Date | Fine | Court Fee |
| CONVICTED | 05/16/2011 | $4,000.00 | $417.00 |
| Offense County | Plea | Plea Date | Statute |
| | Guilty | | |

Offense Details

| | |
|---|---|
| Agency | TX2460500 |
| Citation | 49.09 (A) |
| Individual ID | Redact |
| NCIC Code | 2600 |
| Offense Code | 54040010 |
| Prosecuting Agency | WILLIAMSON COUNTY (FLORENCE, TEXAS) |
| Tracking Number | 9203271937 |
| Transaction Number | 19499629 |
| TRS TRN Code | A001 |

Arrest Details

| | |
|---|---|
| Arresting Agency | WILLIAMSON COUNTY (ROUND ROCK, TEXAS) |

Court Details

| | |
|---|---|
| Court Name | WILLIAMSON COUNTY COURT AT LAW 3 |
| Probation Sentence | 15 months |
| Sentence Date | 05/16/2011 |

**Offense:** DRIVING WHILE INTOXICATED

| Case Number | Cause Number | Offense Level | File Date |
|---|---|---|---|
| 9086875351 | 0605433 | MB | |
| Offense Date | Arrest Date | Charge Date | |
| 12/21/2005 | 12/21/2005 | | |
| Disposition | Disposition Date | Fine | Court Fee |
| CONVICTED | 06/05/2006 | $2,000.00 | $364.00 |

| Offense County | | Plea | Plea Date | Statute |
|---|---|---|---|---|
| | | Guilty | | |

Offense Details

| | |
|---|---|
| Agency | TX2460500 |
| Citation | 49.04 |
| Individual ID | Redact |
| NCIC Code | 2599 |
| Offense Code | 54040009 |
| Prosecuting Agency | WILLIAMSON COUNTY (FLORENCE, TEXAS) |
| Tracking Number | 9086875351 |
| Transaction Number | 15076171 |
| TRS TRN Code | A001 |

Arrest Details

| | |
|---|---|
| Arresting Agency | WILLIAMSON COUNTY (ROUND ROCK, TEXAS) |

Court Details

| | |
|---|---|
| Court Name | WILLIAMSON COUNTY COURT AT LAW 3 |
| Probation Sentence | 15 months |
| Sentence Date | 06/05/2006 |

| | |
|---|---|
| Name on File | STEPHANIE JO MYERS |
| Date of Birth | Redacted |
| Gender | Female |
| Race | CAUCASIAN / WHITE |
| Height | 5 FEET 07 INCHES |
| Weight | 125 LBS |
| Address | Redacted        ROUND ROCK, TX Red |
| Source Of Record | Travis TX, Misdemeanors |
| Match Type | Exact Name And DOB Match |

**Offense:** ASSAULT CAUSES BODILY INJURY FAMILY VIOLENCE

| Case Number | Cause Number | Offense Level | File Date |
|---|---|---|---|
| C-1-CR-05-709604 | | | 10/20/2005 |
| Offense Date | Arrest Date | Charge Date | |
| 08/29/2005 | | | |
| Disposition | Disposition Date | Fine | Court Fee |
| DISMISSED | 07/31/2006 | $0.00 | $0.00 |
| Offense County | Plea | Plea Date | Statute |
| Travis | | | |

| | |
|---|---|
| Name on File | Stephanie Jo Myers |
| Date of Birth | Redacted |
| Gender | Female |
| Race | White |
| Eye Color | Green |
| Hair Color | Brown |
| Height | 67 |
| Weight | 142 lbs |
| Source Of Record | Williamson, Texas |
| Match Type | Exact Name And DOB Match |

**Offense:** ASSAULT W/ BODILY INJURY

| Case Number | Cause Number | Offense Level | File Date |
|---|---|---|---|
| | | MA | 02/11/2004 |
| Offense Date | Arrest Date | Charge Date | |
| 05/20/2003 | 09/04/2003 | | |
| Disposition | Disposition Date | Fine | Court Fee |
| Dismissed - Other | 02/10/2005 | $0.00 | $0.00 |

| Offense County | | Plea | Plea Date | Statute |
|---|---|---|---|---|
| Williamson | | | | |

Offense Details
Arresting Agency    Williamson County Sheriff's Office
Court Details
Court Name    3

| Name on File | Stephanie Jo Myers |
|---|---|
| Date of Birth | Redacted |
| Gender | Female |
| Race | White |
| Eye Color | Green |
| Hair Color | Brown |
| Height | 67 |
| Weight | 142 lbs |
| Source Of Record | Williamson, Texas |
| Match Type | Exact Name And DOB Match |

**Offense: DRIVING WHILE INTOXICATED**

| Case Number | | Cause Number | Offense Level | File Date |
|---|---|---|---|---|
| | | | MB | 01/24/2006 |
| Offense Date | | Arrest Date | Charge Date | |
| 12/21/2005 | | 12/21/2005 | | |
| Disposition | | Disposition Date | Fine | Court Fee |
| Final Conviction - Fine Only | | 06/05/2006 | $0.00 | $0.00 |
| Offense County | | Plea | Plea Date | Statute |
| Williamson | | | | |

Offense Details
Arresting Agency    Round Rock Police Dept
Court Details
Court Name    3

**Offense: DRIVING WHILE INTOXICATED**

| Case Number | | Cause Number | Offense Level | File Date |
|---|---|---|---|---|
| | | | MB | 10/15/2007 |
| Offense Date | | Arrest Date | Charge Date | |
| 12/21/2005 | | | | |
| Disposition | | Disposition Date | Fine | Court Fee |
| Motion to Revoke Denied | | 02/19/2008 | $0.00 | $0.00 |
| Offense County | | Plea | Plea Date | Statute |
| Williamson | | | | |

Court Details
Court Name    3

| Name on File | Stephanie Jo Myers |
|---|---|
| Date of Birth | Redacted |
| Gender | Female |
| Race | White |
| Eye Color | Green |
| Hair Color | Brown |
| Height | 67 |
| Weight | 142 lbs |
| Source Of Record | Williamson, Texas |
| Match Type | Exact Name And DOB Match |

**Offense: DRIVING WHILE INTOXICATED 2ND**

| Case Number | Cause Number | Offense Level | File Date |
|---|---|---|---|

|  |  | MA | 02/15/2011 |
| Offense Date | Arrest Date | Charge Date |  |
| 01/29/2011 | 01/29/2011 |  |  |
| Disposition | Disposition Date | Fine | Court Fee |
| Final Conviction - Formal Probation | 05/16/2011 | $0.00 | $0.00 |
| Offense County | Plea | Plea Date | Statute |
| Williamson |  |  |  |
| Offense Details |  |  |  |
| Arresting Agency | Round Rock Police Dept |  |  |
| Court Details |  |  |  |
| Court Name | 3 |  |  |

**Offense:** DRIVING WHILE INTOXICATED 2ND

| Case Number | Cause Number | Offense Level | File Date |
|  |  | MA | 02/15/2011 |
| Offense Date | Arrest Date | Charge Date |  |
| 01/29/2011 | 01/29/2011 |  |  |
| Disposition | Disposition Date | Fine | Court Fee |
|  |  | $0.00 | $0.00 |
| Offense County | Plea | Plea Date | Statute |
| Williamson |  |  |  |
| Offense Details |  |  |  |
| Arresting Agency | Round Rock Police Dept |  |  |
| Court Details |  |  |  |
| Court Name | 3 |  |  |

**Access No: DA 7978**                **Order No: 9460750**

# OFAC Search

Screened For: DA 7978 - Ivanhoe Duplexes
26-Jun-2013

**Applicant Information**
Myers, Stephanie J                          SSN XXX-XX-5669
Redacted                                    DOB Redacted
TEMPLE, TX Red

### NO RECORDS FOUND ON THIS SUBJECT

**Criminal Report Disclaimer**

This criminal background check is based upon limited identification information, i.e. name and/or birth date, etc. Because of this, absolute certainty that this check applies to the individual being screened is not possible. Caution is urged even when this check produces an accurate match. The data relied on for this criminal search was obtained from State Agencies and are updated through the Dru Sjodin data feed. Terrorist search results are obtained from the Federal Office of Foreign Asset Control and various State Agencies. These Agencies AND NTN URGE YOU to independently VERIFY all criminal background information prior to using the data. To verify terrorist matches contact the Federal Office of Foreign Asset Control at 202-622-2490. Additional information and verification can be obtained from the local law enforcement agency where the offender resides. No responsibility is accepted by NTN for errors in State records.

**VERIFY ALL DATA**